333 A.2d 881
**COMMONWEALTH of Pennsylvania**

v.

**Percy JOHNSON, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 22, 1974.

Decided March 18, 1975.

494

Abraham T. Needleman, J. S. Gottlieb, Philadelphia, for appellant.

Stephen B. Harris, First Asst. Dist. Atty., Kenneth G. Biehn, Dist. Atty. of Bucks County, Doylestown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Percy Johnson, was tried by a judge and jury and found guilty of murder in the first degree. Post-trial motions were denied and appellant was sentenced to life imprisonment in a state correctional institution. This appeal followed.

Appellant first argues that his first-degree murder conviction must be reversed because it was the product of his being placed twice in jeopardy. The facts surrounding this argument are as follows. On October 16, 1972, appellant was brought to trial before a judge sitting with a jury and tried for aggravated robbery and murder. The trial continued until October 21, 1972, when the indictments were submitted to the jury. After seven hours, the jury returned to inform the court that they could not agree on all counts in the indictments. The judge sent them back for further deliberations, and they returned in one hour, again advising the court that they could not agree on all counts. The trial judge, pursuant to Rule 1120 Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix, then declared a mistrial as to the murder indictment and accepted the guilty verdict on the aggravated robbery charge.

We are of the opinion that the trial judge was correct in his declaration of a mistrial at appellant's first trial and, therefore, his second trial was not barred by double jeopardy. In appellant's first trial, the trial judge was informed by the jury after seven hours of deliberations that they were deadlocked. He then asked the foreman if there was a possibility of their reaching a verdict. The foreman stated that there was a chance a verdict might be reached. The judge then sent the jury back to deliberate and told them to return to the court-

room if they could not reach a verdict. An hour later the foreman returned and the following took place:

"THE COURT: Members of the Jury, I have received another note from your Foreman which reads as follows:

'Honorable Judge Garb:

'After due deliberation we are definitely and completely deadlocked on the first count of the indictment.

'It's our opinion it is useless to continue our deliberations. The Jury was again polled.

"And it is signed, 'The Jury, Cornelius de Groot, Foreman.'

"Is that your note, Members of the Jury?

"THE FOREMAN: That's it.

"THE COURT: Can I read from that note that you have deliberated for approximately 50 minutes after leaving this Court Room and that you are still unable to reach a verdict on the first charge, the charge of murder?

"THE FOREMAN: Yes, that's correct.

"THE COURT: You feel that you are therefore, hopelessly deadlocked?

"THE FOREMAN: I believe, Your Honor, we are.

"THE COURT: All right. Now, as I understand you have a verdict on the other seven charges; is that correct?

"THE FOREMAN: Yes, sir."

Under these facts, we are of the opinion that the trial judge was presented with a situation of manifest necessity and that he could, therefore, declare a mistrial without the consent of appellant or his counsel. See *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973).

█ Appellant next argues that the trial judge erred in failing to charge on voluntary manslaughter. We do not agree. Appellant did not request a charge of volun-

tary manslaughter, nor did he note a specific exception when the trial court failed to so charge. See *Commonwealth v. Clair*, —— Pa. ——, 326 A.2d 272 (1974).

Lastly appellant argues that he was denied due process of law because of the systematic exclusion of Blacks from his jury. Appellant presented statistical evidence which showed a disproportionately small number of Blacks on juries in Bucks County as compared to the percentage of the Black population. According to appellant, this evidence establishes a prima facie case of racial discrimination which required the Commonwealth to rebut, which the Commonwealth did not do in the instant case. The issue of whether statistical probabilities is sufficient to establish a prima facie case of racial discrimination on juries has been considered by the United States Supreme Court and found not to make out a prima facie case of racial discrimination. Cf. *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). See also *Smith v. Yeager*, 3 Cir., 465 F.2d 272 (1972).

Judgment of sentence affirmed.

NIX, J., took no part in the consideration or decision of this case.

ROBERTS and POMEROY, JJ., concur in the result.

MANDERINO, J., dissents.