COMMONWEALTH of Pennsylvania,
Appellee,

v.

Vincent R. McCORD, Appellant.

Superior Court of Pennsylvania.

Submitted April 16, 1997.
Filed Aug. 6, 1997.

Robert Glessner, York, for appellant.

Jonelle Harter, Asst. Dist. Atty., York, for the Com., appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of York County which denied appellant's motion to dismiss charges on double jeopardy grounds.[1]

Herein, appellant raises a question of first impression. He contends the prohibitions against double jeopardy set forth in the con-

---

1. Such an order is final and immediately appealable. *Commonwealth v. Kresge,* 317 Pa.Super. 405, 464 A.2d 384 (1983).

stitutions of Pennsylvania and the United States bar his reprosecution where, in his first trial, the jury was deadlocked on charges of recklessly endangering another person and endangering the welfare of a child but had reached a verdict on the charge of aggravated assault, even though the aggravated assault verdict was not entered upon the record. Upon review, we find that double jeopardy bars the retrial of appellant on the charge of aggravated assault and its lesser-included offense of reckless endangerment, but appellant may be retried on the remaining charge of endangering the welfare of a child.

The record reveals that appellant was charged with aggravated assault, reckless endangerment and endangering the welfare of a child. The Commonwealth alleged that appellant shook his infant son and caused serious bodily injury to the child. At the conclusion of appellant's five day trial, the lower court instructed the jury, and the jury retired to deliberate at 1:42 p.m., on September 15, 1995. Only minutes later, the jury asked the first of many questions, "Could we have a copy of the criteria needed to determine each of the charges and/or the definition of each charge?" N.T., Vol.III, p. 340. The judge responded, "No, The law does not permit the providing of a copy of each of the charges, thus preventing undue focus on a portion of the charge over the entirety. If at any time the Jury would wish the Court to verbally repeat a portion, it will." N.T., Vol. III, p. 340. The jury then continued its deliberation.

At 3:35 p.m., the jury asked the court to "[p]lease explain Aggravated Assault, Recklessly Endangering Another Person, Endangering the Welfare of Children, reasonable doubt." N.T., Vol. III, p. 341. The court then gave a thorough answer to the jury's inquiry. See, N.T., Vol.III, pp. 343–350. The jurors then retired to deliberate until 4:55 p.m., when they again asked the court for further direction, as follows: "We need to hear once again the charges of Recklessly Endangering and Endangering Welfare. We specifically need an explanation of the term 'knowingly' as it relates to these charges." N.T., Vol.III, pp. 350–351. The judge then reinstructed the jury as to reckless endangerment and endangering the welfare of a child and specifically indicated that "knowingly" is not involved in the charge of reckless endangerment. See, N.T., Vol.III, pp. 353–358.

At 5:08 p.m., the jurors again returned to deliberate, but at 5:55 p.m., they informed the court, "We are split about equally on the second and third charges. There is no change or movement." And, they asked, "What do we do?" N.T., Vol.III, p. 358. The court then discussed the jury's question with counsel during which defense counsel stated, "If the jury is deadlocked, I would ask for a mistrial your honor." N.T., Vol.III, p. 360. The court decided, with counsels' approval, to inquire whether further deliberations might be fruitful. N.T., Vol.III, pp. 360–361. After a brief on the record colloquy of the jury's foreperson during which the foreperson indicated that further deliberations might result in verdicts, the court instructed the jury as follows:

All right. I'm going to reiterate your duties as Jurors and not go beyond that.

The term deadlocked means that no one is going to move one way or the other. I'm going to reiterate your duty as a Juror as I've outlined it to you originally. I do so because it is not likely that this case will be any better tried at any other time, and hopefully with this re-examination, at least you can make a determination if you are indeed hopelessly deadlocked.

Your verdict must be unanimous. This means that in order to return a verdict, each of you must agree to it. You have a duty to consult with each other and to deliberate with a view to reaching an agreement if it can be done without doing any violence to your individual judgment.

Each of you must decide the case for him or herself, but only after there has been an impartial consideration with your fellow Jurors.

In the course of deliberations, each Juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous. However, no Juror should surrender an honest conviction as the weight or effect of the

evidence solely because of the opinion of his or her fellow Jurors, or for the mere purpose of returning a verdict.

It being represented to the Court that there is hope of some movement, if you do not feel there has been an impass [sic] that cannot be overcome, I'll of course permit you to return to deliberations and we'll provide some form of sustenance for you.

If you do reach a point, though, and again, being mindful of the standards that I've articulated for you, if you've reached a point where it's determined it's deadlocked, and I can't tell from what you're telling me that it is or it isn't, we, the parties, need to be apprised of that, and the Court then will act accordingly.

N.T., Vol. III, pp. 363–365.

The jury then renewed its deliberations at 6:13 p.m. At 8:55 p.m., the jury sent the court another note, stating: *"We are decided on the first charge,* but deadlocked on the second and third. There appears to be no chance of a decision on the last two. Please advise." N.T., Vol.III, p. 365 (emphasis added). Whereupon, the judge ruled, "By virtue of this, the Court will be declaring a mistrial." N.T., Vol.III, pp. 366. When specifically asked if he had any comments on the ruling, defense counsel, on two specific occasions, stated, "No, sir." N.T., Vol.III, pp. 366, 367. The court then called the jury into the courtroom and dismissed the jury "by necessity". N.T., Vol.III, p. 367.[2]

Based on those facts, we must determine whether double jeopardy bars reprosecution of appellant on any or all of the charges involved in his first trial in which the lower court entered a mistrial as to all charges, even though the jury had informed the court that it had reached a verdict on the charge of aggravated assault. Several important questions are imbedded within this complex issue. First, we must determine whether appellant has waived his state procedural, Pa. R.Crim.P. 1120, and his double jeopardy challenge to retrial. Second, we must determine whether the lower court properly granted a mistrial as to any or all of the charges against appellant, i.e., whether the

trial court abused its discretion in deciding that "manifest necessity" for a mistrial existed. And, finally, if we determine that appellant's double jeopardy claim has merit as applied to the aggravated assault charge, we must also decide whether reprosecution on the charges of reckless endangerment and endangering the welfare of a child are also barred by double jeopardy protections or Pa.R.Crim.P. 1120(d).

■ The prohibition against double jeopardy set forth in Article I, § 10 of the Pennsylvania Constitution and the Fifth Amendment to the Constitution of the United States of America protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction and multiple punishments for the same offense. *Commonwealth v. McCane,* 517 Pa. 489, 499, 539 A.2d 340, 345–346 (1988), *citing, North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Commonwealth v. Kemmerer,* 526 Pa. 160, 163 n. 4, 584 A.2d 940, 942 n. 4 (1991).

To begin our analysis of appellant's double jeopardy claim, we must address the Commonwealth's argument that appellant has waived his double jeopardy claim either by failing to demand the trial court to record the jury's verdict on the aggravated assault charge or by requesting a mistrial. Pa. R.Crim.P. 1120 is applicable to our present situation, and that rule, in pertinent part provides:

(d) If there are two or more counts in the information or indictment, the jury may report a verdict or verdicts with respect to those counts upon which it has agreed, and the judge shall receive and record all such verdicts. . . .

\* \* \*

(f) Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. Except where the verdict is sealed, if upon such poll there is no concurrence, the jury shall be directed to retire for further deliberations.

---

**2.** We note that appellant's current counsel was also appellant's counsel at trial.

The Commonwealth argues that by failing to request the court to poll the jury, appellant waived his challenge to the court's failure to receive and record the aggravated assault verdict. We reject this argument. Pa.R.Crim.P. 1120(f) says nothing about a judge's *duty* to receive and record a verdict. Rather, it only requires a judge to poll the jury where a party requests such action, and it is reversible error for a judge to refuse such a request. *Commonwealth v. Parks,* 273 Pa.Super. 506, 417 A.2d 1163 (1979). The clear purpose of the rule is to insure that each juror voluntarily agrees with the announced verdict without the influence of coercion or fatigue. *Commonwealth v. Johnson,* 312 Pa.Super. 484, 459 A.2d 5 (1983). We hold that Pa.R.Crim.P. 1120 does not require the defendant to request the jury be polled in order for the jury's verdict to be recorded. Rather, it is the duty of the trial judge to insure that a verdict, once reached, is received and recorded.

The trial court, in its opinion, submits that Pa.R.Crim.P. 1120(d) does not require the court to receive and record a verdict because its language is permissive. We agree that Pa.R.Crim.P. 1120(d) is permissive with respect to the *jury's duty* —"the jury *may* report a verdict or verdicts with respect to those counts upon which it has agreed". (emphasis added). Presently, the jury expressly informed the court that it had reached a verdict on the aggravated assault charge. Consequently, it was the trial judge's duty under Pa.R.Crim.P. 1120(d) to receive and record the verdict. Once the jury has advised the court it has reached a verdict, "the judge *shall* receive and record all such verdicts." Pa.R.Crim.P. 1120(d) (emphasis added). The Commonwealth and the lower court assert that the judge has no such duty. However, as our analysis, *infra,* will reveal, a judge's failure to receive and record a jury's verdict (when the jury has informed the court that it has reached a

verdict as to one or more of multiple charges) results in an improperly granted mistrial or, in other words, a violation of the court's duty.[3]

Next, we find that appellant did not request a mistrial in the present case, but his mere acquiescence to the *sua sponte* grant of a mistrial by the trial judge is not sufficient to waive his double jeopardy claims. In the seminal case of *Commonwealth v. Bartolomucci,* 468 Pa. 338, 347, 362 A.2d 234, 239 (1976), our Supreme Court, specifically held that mere silence by a defendant or lack of a specific objection will not amount to a waiver of defendant's "very important constitutional right" of protection from double jeopardy. *Cf., Commonwealth v. Baker,* 413 Pa. 105, 115, 196 A.2d 382, 387 (1964); *Commonwealth v. Diehl,* 532 Pa. 214, 615 A.2d 690 (1992) (no waiver of double jeopardy claim where court *sua sponte* granted a mistrial); *Commonwealth v. Cooper,* 389 Pa.Super. 381, n. 2, 567 A.2d 656, 659 n. 2 (1989)(same); *compare, Commonwealth v. Phillippi,* 442 Pa.Super. 198, 658 A.2d 1368 (1995), *appeal denied,* 542 Pa. 664, 668 A.2d 1128 (1995) (defendant waived double jeopardy claim where counsel consented to mistrial after a juror did not return to deliberate).

Herein, appellant did expressly request a mistrial at one point during jury deliberations, stating: "If the jury is deadlocked, I would ask for a mistrial, your honor." N.T., Vol.III, p. 360. However, that request was made before the jury expressly told the court that it had reached a verdict on the aggravated assault charge. Thereafter, appellant did not renew his request for a mistrial, but rather, merely did not object to the court's *sua sponte* grant of a mistrial as to all charges. Regardless of any ambiguity related to appellant's agreement with a mistrial as to those charges on which the jury was deadlocked, the record is clear that ap-

---

3. We note that the Commonwealth's argument ignores the events which transpire in courtrooms across Pennsylvania everyday where a verdict is entered without either party requesting a poll of the jurors. Further, we reject the Commonwealth's suggestion that the jury's note to the judge which specifically indicated, "We are decided on the first charge but deadlocked on the second and third[,]" did not amount to a "report" of a verdict by the jury. Once again, the Commonwealth's reasoning ignores the usual situation where the jury reports it has reached a verdict, whereupon the court simply summons the jury into the courtroom and inquires whether the verdict is guilty or not guilty.

pellant did not consent to a mistrial on the aggravated charge upon which the jury clearly was not deadlocked.[4]

Since appellant did not request or consent to the entry of a mistrial, we must determine whether the lower court granted the mistrial on any or all of the charges based upon facts which established a "manifest necessity" for a mistrial. *Bartolomucci,* 468 Pa. at 347, 362 A.2d at 239; *Diehl,* 532 Pa. at 216, 615 A.2d at 691; *Phillippi,* 658 A.2d at 1370. A failure of the lower court to consider less drastic alternatives before declaring a mistrial creates doubt about the exercise of the court's discretion and may bar re-prosecution because of double jeopardy. *Phillippi,* 658 A.2d at 1370; *Diehl,* 532 Pa. at 216–218, 615 A.2d at 691; *Commonwealth v. Balog,* 395 Pa.Super. 158, 163–165, 576 A.2d 1092, 1095 (1990); Pa.R.Crim.P. 1118(b) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."). The determination of whether to declare a mistrial after jeopardy has attached is one of utmost importance since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Diehl,* 532 Pa. at 216–218, 615 A.2d at 691, *citing, Commonwealth v. Stewart,* 456 Pa. 447, 452, 317 A.2d 616, 619 (1974).

■ To date, courts of this Commonwealth and the United States of America have declined to establish a rigid rule for determining whether "manifest necessity" for a mistrial existed. *Cooper,* 567 A.2d at 657; *Balog,* 576 A.2d at 1095. Rather, each case must turn on its facts. *Cooper,* 567 A.2d at 657; *Balog,* 576 A.2d at 1095. Nevertheless, it is clear that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci,* 468 Pa. at 346–349, 362 A.2d at 239; *Diehl,* 532 Pa. at 216–218, 615 A.2d at 691.[5]

■ Turning to the facts *sub judice,* we find it abundantly clear that "manifest necessity" for a mistrial on the charge of aggravated assault was wholly lacking. Obviously, a "less drastic" alternative to a mistrial was readily available. The court simply could have received and recorded the jury's verdict on the charge of aggravated assault since the jury had expressly indicated that it had reached a verdict on that charge. There was no deadlock which required a mistrial on the aggravated assault charge. Accordingly, double jeopardy bars retrial of appellant on the charge of aggravated assault. *Cf., Balog, supra,* (double jeopardy bars reprosecution where less drastic alternative to mistrial was not considered by trial court); *Cooper, supra* (same); *Commonwealth v. Bradley,* 311 Pa.Super. 330, 457 A.2d 911 (1983) (same). *See, e.g., Commonwealth v. Jones,* 274 Pa.Super. 162, 418 A.2d 346 (1980) *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980) (judge properly declared a mistrial on four of six charges due to deadlock of the jury, after receiving and recording not guilty verdicts on the two remaining counts).

Our holding today matches that of the Sixth Circuit Court of Appeals of the United States of America in *Wallace v. Havener,* 552 F.2d 721 (6th Cir.1977), *cert. denied, Wallace v. Jago,* 434 U.S. 940, 98 S.Ct. 433, 54 L.Ed.2d 300 (1977). Therein, the defendant was charged with one count of armed robbery, three counts of shooting with intent to kill and one count of illegally possessing a firearm. At the first trial, the jury announced that it had reached a verdict on all three counts of shooting with the intent to kill and the count of illegally possessing a

---

4. The question of whether appellant did consent to the grant of a mistrial on the charges of reckless endangerment and endangering the welfare of a child is certainly less clear than that of whether he consented to a mistrial on the charge of aggravated assault. While we could justify a finding the appellant had consented to a mistrial as to those lesser charges, we will give appellant the benefit of the doubt, given the importance of his constitutional rights. *Cf., Bartolomucci,* 468 Pa. at 347, 362 A.2d at 239 ("but any doubt regarding the propriety of the exercise of discretion and thus about the necessity for the mistrial must be resolved in favor of the accused.").

5. When ruling upon the propriety of a mistrial, we apply the standards established by both Pennsylvania and federal decisions. *Diehl,* 532 Pa. at 216–218, 615 A.2d at 691, *citing, Commonwealth v. Mitchell,* 488 Pa. 75, 410 A.2d 1232 (1980).

firearm, but that it was deadlocked on the count of armed robbery. Without receiving and recording those verdicts, the trial court declared a mistrial on all counts of the indictment. The defendant was then retried and convicted on all five counts. After exhausting his state remedies, the defendant sought federal *habeas corpus* relief. The Sixth Circuit specifically held:

> In the present case, taking all the circumstance into consideration, we are directed to no problem at the first trial which would warrant a determination of manifest necessity to justify the discharge of the jury and the refusal to accept the verdicts that the jury had reached on Counts 2 through 5. Thus, the Ohio trial court judge abused his discretion by not accepting those jury verdicts, and the retrial of the petitioner on Counts 2 through 5 placed him in jeopardy.

*Wallace,* 552 F.2d at 722.

The Commonwealth seems to argue that reprosecution of appellant on the charge of aggravated assault does not violate his double jeopardy protections since a verdict was never entered on the record in the first prosecution. In other word, appellant's original jeopardy on the aggravated assault charge has not been terminated, and double jeopardy principles do not apply. *See, McCane,* 517 Pa. at 500 n. 6, 539 A.2d at 346 n. 6 ("Double jeopardy presupposes a termi-

nation of original jeopardy."). The Commonwealth cites to *Commonwealth v. Williams,* 279 Pa.Super. 28, 420 A.2d 727, 729 (1980) for the proposition that "it is beyond dispute that a verdict is not final unless it is recorded; until that point the jury may correct or alter it." *Id.,* at 729, *citing, Commonwealth v. Pemberton,* 256 Pa.Super. 297, 389 A.2d 1132 (1978); *Commonwealth v. Johnson,* 359 Pa. 287, 59 A.2d 128 (1948). We do not dispute that proposition. However, we find that holding is inapplicable to our present situation where the court was presented with a verdict but neglected to receive and record the verdict. Clearly, whenever a mistrial as to a charge is granted a final verdict on that charge is not entered on the record. Nevertheless, since 1824, when Justice Story authored the United States Supreme Court's opinion in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165, it had been well settled that double jeopardy prohibits a new trial after a mistrial has been declared without the defendant's consent or request whenever "manifest necessity" for a new trial is absent. *Bartolomucci,* 468 Pa. at 344–346, 362 A.2d at 238; *Diehl,* 532 Pa. at 216–218, 615 A.2d at 691; *Balog,* 576 A.2d at 1092. If we were to adopt the Commonwealth's position, double jeopardy would never be implicated in the context of a mistrial because a "final" verdict would never be entered.[6]

---

**6.** In *Williams, supra,* the jury had originally reached a verdict on the charge of attempted murder, one count of a multicount indictment, and *preliminarily* indicated so on its verdict slip. However, subsequent deliberations on the additional counts lead the jury to reconsider its attempted murder verdict, and the jury scratched out their original decision on the verdict slip. Eventually, the jury returned to the courtroom and indicated that it had reached a verdict on the charge of resisting arrest but was hopelessly deadlocked on the remaining charges, including attempted murder. The judge polled the jury and recorded the resisting arrest verdict. The judge also inquired why a possible verdict on the attempted murder charge had been scratched out. The foreman explained that the jury had reconsidered their prior decision and were now deadlocked. The defendant moved for a mistrial which was granted.

In *Williams, supra,* the defendant argued that double jeopardy prevented his retrial on the charge of attempted murder since the jury's "initial or tentative 'verdict,' apparently to acquit, which was reached in the deliberation room, but

changed before they returned to the courtroom, is the sole valid one and precludes reprosecution." *Id.,* at 728–729. In other words, *Williams* argued that a verdict had been entered in his prior prosecution, and original jeopardy had terminated, thus, raising double jeopardy protections. Clearly, however, the jury never reached a final verdict on the attempted murder charge in *Williams, supra.* Original jeopardy did not end, and retrial was not barred. *See, McCane,* 517 Pa. at 500–501, 539 A.2d at 346, *citing Richardson v. United States,* 468 U.S. 317, 323–326, 104 S.Ct. 3081, 3085–3086, 82 L.Ed.2d 242 (1984) and *Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985).

To the contrary, in the present case, the record reveals that a verdict was reached by the jury. Of course, since the verdict was never entered on the record, we cannot be absolutely positive that a verdict was reached on the aggravated assault charge. However, as our Supreme Court clearly stated in *Bartolomucci, supra,* where doubt exists, it must be resolved in favor of the accused. Given that standard, we find that despite the

Turning now to the propriety of the lower court's grant of a mistrial on the charges of reckless endangering another person and endangering the welfare of a child, we find that the lower court did not abuse its discretion in finding "manifest necessity" for a mistrial. The record reveals that the jury deliberated for over four hours before initially indicating that they were "split evenly" on the charges of reckless endangerment and endangering the welfare of a child and asking the court, "What do we do?" The court then inquired whether the jury was hopelessly deadlocked. Based on the foreperson's answer, the court reinstructed the jurors on their duties and directed them to deliberate further. The jury deliberated for over two and one-half additional hours before advising the court that they had reached a verdict on aggravated assault but were deadlocked "with no chance of decision" on the remaining two charges.

▓▓▓▓ Only after six and one-half hours of deliberation by the jury and a second report of a deadlock did the judge declare a mistrial, and we cannot fault his decision with regard to the mistrial on the charges of reckless endangerment and endangering the welfare of a child. *Cf., Commonwealth v. Johnson,* 460 Pa. 493, 333 A.2d 881 (1975) (where after seven hours of deliberation jury reported a deadlock and, after fifty minutes of further deliberation, reported they were hopelessly deadlocked, "manifest necessity" for a mistrial existed) (Per O'Brien, J., with two Justices concurring and two Justices concurring in the result); *Jones, supra* (judge properly declared a mistrial on four of six charges where jury was able to reach verdicts on two of the charges but remained deadlocked on the four remaining charges after five and three-quarters hours of deliberation); *Commonwealth v. Kivlin,* 267 Pa.Super. 270, 406 A.2d 799 (1979) (after protracted deliberations and a trial court inquiry regarding

whether the jury was deadlocked, court's grant of mistrial was proper); *Commonwealth v. Smith,* 324 Pa.Super. 156, 471 A.2d 510 (1984) (mistrial properly entered where jury was unable to reach a verdict after appropriate time for deliberation). *Compare, Bartolomucci, supra* (mistrial improperly entered after jury deliberated for approximately eight and one-half hours where tipstaff related to court that jury was deadlocked, since court *itself* failed to inquire of the jurors whether they were hopelessly deadlocked).

Our determination that "manifest necessity" justified the mistrial on the charges of reckless endangerment and endangering the welfare of a child does not end our inquiry. We must also determine whether application of Pa.R.Crim.P. 1120(d) or double jeopardy bars reprosecution of appellant on those charges, since the jury reached a verdict on the charge of aggravated assault in appellant's first prosecution. Upon review, we hold that double jeopardy bars appellant's retrial on the charge of reckless endangerment, but does not bar retrial on the charge of endangering the welfare of a child.

As previously stated, appellant claims Pa.R.Crim.P. 1120 bars retrial. In pertinent part, Pa.R.Crim.P. 1120(d) provides: "If the jury cannot agree with respect to all counts in the information or indictment[,] if those counts to which it has agreed operate as an acquittal of lessor or greater included offenses to which they cannot agree, these latter counts shall be dismissed." As noted in the comment to the rule, this provision "serve[s] only to codify the procedure where conviction or acquittal of one offense operates as a bar to a later trial on a necessarily included offense." In other words, if reprosecution is not barred by double jeopardy principles, then retrial is not barred by Pa.R.Crim.P. 1120(d). *McCane,* 539 A.2d at

lower court's failure to receive and record the verdict on the record, a final verdict was entered in this case, and original jeopardy was terminated as to the aggravated assault charge.

The lower court suggests "just as the defendant in *Williams* could not create an acquittal out of a deadlock by using juror testimony, [appellant] here cannot create an acquittal where no verdict has been requested." Trial Court Opinion, p. 16.

However, as previously stated, the problem herein is that the lower court granted a mistrial where "manifest necessity" was not present, i.e., the jury was not deadlocked on the aggravated assault charge. Whether the jury found appellant guilty or not guilty is irrelevant to the question before us of whether a less drastic alternative to a mistrial was available. Obviously, there was.

344; *Kemmerer*, 526 Pa. at 162–164, 584 A.2d at 942 (Rule 1120(d) provides no greater protection than the double jeopardy principles); *Commonwealth v. Harris*, 400 Pa.Super. 12, 21–25, 582 A.2d 1319, 1324–1325 (1990) ("Because retrial is not barred by principles of double jeopardy, it also is not barred by Rule 1120(d)"), *appeal denied* 528 Pa. 621, 597 A.2d 1151 (1991).

▆▆▆▆ As a general rule, a mistrial because of a jury's inability to reach a verdict does not implicate the principles of double jeopardy, and retrial is not prohibited. *McCane*, 517 Pa. at 500–501, 539 A.2d at 346; *James, supra; Harris*, 400 Pa.Super. at 15–17, 582 A.2d at 1321, *quoting Richardson*, 468 U.S. at 323–326, 104 S.Ct. at 3085–3086. However, an exception to that rule exists when a defendant was acquitted or convicted on some charges in the same trial, and the same jury was unable to reach a verdict on other charges. *Harris*, 400 Pa.Super. at 15–19, 582 A.2d at 1322, *citing Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). As stated in *Harris*, 400 Pa.Super. at 15–19, 582 A.2d at 1322, "retrial of charges on which a jury has been unable to agree is not barred unless the jury made findings on one or more other charges which must be interpreted as an acquittal of the

offense for which the defendant is to be retired." *See also, Jones*, 418 A.2d at 350–351; *Commonwealth v. Pounds*, 281 Pa.Super. 19, 421 A.2d 1126 (1980). As noted in *Kemmerer*, 526 Pa. at 168–170, 584 A.2d at 945, the distinction between *necessarily included* offenses and *lesser included* offenses has been blurred in the past. However, as *Kemmerer*, 526 Pa. at 168–170, 584 A.2d at 945, revealed the distinction is clear, a crime is a necessarily included offense only when the necessarily included crime *must* be proven to establish the other crime.[7]

▆▆▆▆ A review of the elements of the offenses *sub judice* reveals that reckless endangerment is a "necessarily included offense" of aggravated assault, while endangering the welfare of a child is not. In the original prosecution of the aggravated assault charge, the Commonwealth sought to prove that appellant attempted to cause serious bodily injury to his infant son or caused such injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to human life. See, Information, Count 1; 18 Pa.C.S.A. § 2702(a). In the prosecution for reckless endangerment, the Commonwealth sought to prove that appellant recklessly engaged

---

**7.** We note that our Supreme Court in *Kemmerer, supra*, cited the case of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), to support the proposition that:

> [T]he prohibitions found in the Fifth Amendment ... operate to prevent the reprosecution of an individual for lesser included offenses only where those offenses are *necessarily included* in offenses of which the individual has already been convicted or acquitted.

*Grady, supra*, was overruled by the United States Supreme Court in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). As the Pennsylvania Supreme Court recognized in *Commonwealth v. Caufman*, 541 Pa. 299, 302, 662 A.2d 1050, 1052 (1995), "*Dixon* cast aside the *Grady* analysis of whether multiple criminal charges rest on proof of the same underlying conduct, and reinstated the double jeopardy test that was followed prior to *Grady*." *See also, Commonwealth v. Jones*, 542 Pa. 464, n. 24, 668 A.2d 491, 511 n. 24 (1995) (second prong of the *Grady* test, i.e., the same conduct test, is overruled; but first prong of *Grady*, i.e., the same elements test of *Blockburger*, remains in effect); *Commonwealth v. Breeland*, 445 Pa.Super. 147, 156–160, 664 A.2d 1355, 1360–1361 (1995), *ap-*

*peal denied*, 544 Pa. 600, 674 A.2d 1066 (1996); *Commonwealth v. Mattis*, 454 Pa.Super. 605, 607–609, 686 A.2d 408, 410–411 (1996).

Prior to *Grady, supra*, double jeopardy claims were analyzed pursuant to *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which set forth the "same elements test." Therein, the inquiry focuses upon whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. *Caufman*, 541 Pa. at 302–304, 662 A.2d at 1052.

While we recognize that *Kemmerer, supra*, cites *Grady, supra*, for support, we are not convinced that *Kemmerer, supra*, has been overruled *sub silentio*, by *Dixon, supra*, or our Supreme Court's application thereof in *Caufman, supra*. The question of whether reckless endangerment and endangering the welfare of children are "necessarily included offenses" need not involve the now-disfavored "same conduct" test of *Grady, supra*. Accordingly, in an abundance of caution, we will continue to follow *Kemmerer, supra*, and its progeny as applied to Pa.R.Crim.P. 1120. *See, Commonwealth v. Smith*, 426 Pa.Super. 31, 34 n. 6, 626 A.2d 178, 180 n. 6 (1993) (*Kemmerer* employed *Blockburger* analysis).

in conduct which placed his infant son in danger of death or serious bodily injury. See, Information, Count 2; 18 Pa.C.S.A. § 2705. Finally, in the prosecution for endangering the welfare of a child, the Commonwealth tried to establish that appellant, a parent of a child under eighteen years of age, knowingly endangered the welfare of his child by violating a duty of care, protection or support. See, Information, Count 3; 18 Pa.C.S.A. § 4304.

In *Commonwealth v. Dobbs,* 452 Pa.Super. 488, 682 A.2d 388 (1996), we held that reckless endangerment is a lesser included offense of aggravated assault for the purposes of merger, i.e., double jeopardy. *Id., citing, Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994). In *Anderson,* 538 Pa. at 580–582, 650 A.2d at 23, our Supreme Court noted that the same analysis used to determine whether offenses merge for sentencing purposes is the same test which is applied to determine whether the double jeopardy protections of the Fifth Amendment have been violated. In *Dobbs, supra,* we held that: "Every element of reckless endangerment is subsumed in the elements of aggravated assault." Such a determination is tantamount to a conclusion that reckless endangerment is *necessarily included* aggravated assault. Consequently, as noted in *Kemmerer,* 526 Pa. at 164–166, 584 A.2d at 943, the application of Rule 1120(d) is limited to those instances where the offense upon which the jury could not agree is *necessarily included* in an offense upon which a verdict is reached.

Retrial of appellant on reckless endangerment charges after an acquittal on the charge of aggravated assault would be tantamount to a second trial on the same offense. The jury would again consider the same elements of the crime of reckless endangerment which are "subsumed" in the crime of aggra-

vated assault at a second trial. Accordingly, double jeopardy precludes retrial of appellant on the charge of reckless endangerment. *Compare, Harris,* 400 Pa.Super. at 19–21, 582 A.2d at 1323 (acquittal of robbery charge does not bar retrial on charge of aggravated assault because neither a theft nor actual infliction of serious bodily injury is a necessary element of aggravated assault after hung jury; nor did conviction of simple assault bar retrial on aggravated assault charge); *Kemmerer, supra* (acquittal on charges of first degree murder and involuntary manslaughter did not bar retrial on charges of second degree murder, third degree murder and voluntary manslaughter after hung jury); *Commonwealth v. Lewis,* 140 Pa. 561, 564, 21 A. 501, 502 (1891) ("both adultery and rape include the offense of fornication, it is necessarily involved in them; bastardy is not necessarily involved, *but it may be* ").

■ The opposite result is reached when we consider the charge of endangering the welfare of a child. Endangering the welfare of a child is neither a lesser included offense of aggravated assault, *Commonwealth v. Grassmyer,* 266 Pa.Super. 11, 402 A.2d 1052 (1979), nor a *necessarily included* offense of aggravated assault. *See, Commonwealth v. Morrison,* 265 Pa.Super. 363, 373–375, 401 A.2d 1348, 1354 (1979)(double jeopardy is not violated when defendant sentenced for both endangering the welfare of a child and aggravated assault).[8]

In sum, we find that the lower court should have received and recorded the jury's verdict on the aggravated assault charge and the grant of a mistrial on that charge was not manifestly necessary. Clearly, a less drastic alternative was readily available. As to the charges of reckless endangerment and endangering the welfare of a child, we find that

**8.** The case of *Smith,* 426 Pa.Super. at 35–37, 626 A.2d at 181, seems to suggest that the *"necessarily included"* analysis is not necessary where the jury seeks to reprosecute after a hung jury, rather than after an acquittal or a conviction. In other words *Smith, supra,* would seem to suggest that the concept of "necessarily included offenses" applies only to successive prosecutions, and since appellant's first trial resulted in a mistrial, this is not a successive prosecution. *See, Smith,* 426 Pa.Super. at 35–37, 626 A.2d at 181.

However, both this court in *Harris, supra,* and *Jones, supra,* and our Supreme Court in *Kemmerer, supra,* did engage in such an analysis where retrial was sought after a mistrial was granted on one charge and a final verdict was rendered upon others. Further, application of Pa. R.Crim.P. 1120(d) to its facts was not raised in *Smith, supra,* while the rule was implicated in *Kemmerer, supra,* and *Harris, supra.* Accordingly, we too analyzed the case according to the "necessarily included offense" standards.

a mistrial was manifestly necessary given the jury's inability to reach a verdict on those charges after sufficient deliberation. However, we conclude that retrial on the charge of reckless endangerment would violate Pa. R.Crim.P. 1120 and double jeopardy. Accordingly, we reverse the decision of the court below in part, affirm in part and remand for appellant's retrial on the charge of endangering the welfare of a child as set forth *sub judice*.

Order affirmed in part. Order reversed in part. Case remanded for a new trial in accordance with the provisions of this opinion. Jurisdiction relinquished.

OLSZEWSKI, J. files a concurring opinion.

OLSZEWSKI, Judge, concurring.

I agree without reservation in the analysis and final disposition of the well-reasoned and thoughtful majority opinion. I write separately, however, only to stress that, but for the trial court's erroneous application of our procedural rules, we would not be constrained to hold that the Commonwealth is prohibited from retrying appellant for the aggravated assault and reckless endangerment offenses with which he was accused and tried.

Our Rules of Criminal Procedure provide that, while a jury may report a verdict, a court must receive and record such once reached. *See* Pa.R.Crim.P. 1120(d). This duty is mandatory. It is, therefore, surprising that the trial court in the instant matter intimates that the jury's verdict had no legal import because the court refused to accept and record it. Further, the court states that appellant "cannot create an acquittal where no verdict had been required." 3/6/96 at 16. In this same vein, I would note that the trial court cannot declare a mistrial where a verdict was reached and, through judicial error, relegated to the annals of legal uncertainty.

Additionally, I note that the practical ramifications of this error cannot be ignored. Appellant was charged with several serious crimes involving the alleged abuse of his infant son. Because of the court's disregard for the jury's verdict, however, the issues of whether appellant was found guilty or not guilty must remain ever shrouded in mystery. Also, one cannot ignore the fact that, in the event that the jury found appellant guilty of the aggravated assault offense, the court's action prohibits appellant from ever being legally responsible for his conduct.

As much as I would prefer for the history of this case to reflect a greater appreciation for our rules and mandates, I recognize that this Court is bound nonetheless by the record below. Based thereon, I concur with the majority and am constrained to hold that the proscriptions against double jeopardy prohibit appellant from being retried for aggravated assault and the lesser included offense of reckless endangerment.