J-S70007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY J. CRAWFORD | |
| Appellant | No. 3070 EDA 2015 |

Appeal from the Judgment of Sentence August 25, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007359-2014

BEFORE: OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:        **FILED January 12, 2017**

Appellant, Anthony J. Crawford, appeals from the judgment of sentence entered on August 25, 2015, following his jury trial convictions for aggravated assault, possessing of an instrument of crime (PIC), carrying a firearm without a license, and recklessly endangering another person (REAP).[1] Upon review, we affirm.

The trial court set forth the facts and procedural history of this case, as follows:

> On June 7, 2013, Appellant had been drinking at Mike and Johnny's Bar in Darby, Pennsylvania with many others to celebrate Rosa Puller's birthday. The get-together included many of Rosa Puller's family members, including her siblings, cousins and her boyfriend, Brian Stokes. Also present was Brian Stokes' friend, [] Appellant[.]

---

[1] 18 Pa.C.S.A. §§ 2702(a), 907, 6106(a), and 2705, respectively.

Near closing time, about 2[:00] a.m., Brian Stokes and [] Appellant got into an argument with some of the women inside the [b]ar. The [v]ictim, Desman Johnson, came to the defense of some of the women at the party after Brian Stokes called the women a couple of bitches[.] This led to an altercation in the parking lot of the [b]ar between Brian Stokes and [] Appellant versus some individuals who came to the defense of the women, including Desman Johnson. During the altercation in the parking lot, Brian Stokes was holding a gun in his hand.

The argument quickly escalated, and Appellant yelled out[,] "Fuck all this arguing." At this point, Appellant pulled out a gun and shot Desman Johnson multiple times. Brian Stokes also fired his gun at this point, but he shot directly up into the air.

Shortly after the shots were fired, several police officers arrived at Mike and Johnny's Bar. Desman Johnson was found unconscious on the ground, bleeding. Desman Johnson was shot multiple times, taken to the University of Pennsylvania Hospital Trauma Unit, and survived the shooting.

Brian Stokes was also on the ground at the scene as he had been attacked by other individuals following the shooting. The [o]fficers did what they could to control the crowd, offer aid to those injured, and collect evidence. After speaking with witnesses, the police ascertained that Brian Stokes fired a gun into the air, and that Appellant, who fled the scene, had been the individual who shot Desman Johnson.

*       *       *

[The Commonwealth charged Appellant with the aforementioned charges, as well as attempted murder.] On December 10, 2014, Appellant was arraigned. On January 12, 2015, Todd Fiore, Esquire, entered his appearance on behalf of Appellant. On March 17, 2015, a [j]ury [t]rial commenced. On March 20, 2015, the [j]ury [t]rial resulted in a [h]ung [j]ury. [The jury acquitted Appellant of attempted murder, but could not agree on the remaining charges.]

On June, 1, 2015, a second [j]ury [t]rial commenced. On June 3, 2015, the [j]ury found Appellant [g]uilty of all [the above mentioned] charges[.]

On June 9, 2015, Appellant filed a "[m]otion to [s]et [a]side the [v]erdict as it was [a]gainst the [w]eight of the [e]vidence." On June 15, 2015, [the trial court] denied [relief].

On July 29, 2015, [new counsel] entered his appearance on behalf of Appellant.

On August 25, 2015, Appellant was sentenced as follows: Count 2, [a]ggravated [a]ssault, 10 to 20 years [of imprisonment]; Count 9, [PIC], 16 months to 32 months[' imprisonment], concurrent to Count 2; Count 10, [carrying a firearm without a license], 42 months to 84 months [of imprisonment], concurrent to Count 9 and Count 2, Count 12, [REAP], 12 months to 24 months[' incarceration], consecutive to Count 2. The aggregate sentence imposed [was] 11 to 22 years [of imprisonment.]

On September 2, 2015, Appellant filed a [p]ost [s]entence [m]otion requesting a new trial. On September 11, 2015, [the trial court] issued an [o]rder denying Appellant's [p]ost [s]entence [m]otion.

Trial Court Opinion, 1/21/2016, at 1-4 (record citations, original brackets and most quotations omitted). This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

---

[2] Appellant filed a notice of appeal on September 21, 2015. On September 28, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely after the trial court granted a requested extension. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 21, 2016.

1. Was [Appellant's] retrial for [a]ggravated [a]ssault a violation of the principles of double jeopardy?

2. Did the [t]rial [c]ourt abuse its discretion and unfairly prejudice [Appellant] when the [c]ourt denied an objection and allowed Police Officer Barr to offer speculative testimony about [Appellant's] retrieval of a gun[?]

3. Was the verdict against the weight of the evidence?

4. Was the evidence sufficient to convict [Appellant] of [a]ggravated [a]ssault, [PIC], [f]irearms [n]ot [t]o [b]e [c]arried [without a] [l]icense, and [REAP]?

Appellant's Brief at 7 (internal citations and suggested answers omitted).

In his first issue presented, Appellant argues that because a jury acquitted Appellant of attempted homicide during his first trial, his "retrial on the charge of [a]ggravated assault violated constitutional guarantees against double jeopardy." *Id.* at 11 (citation omitted). More specifically, relying on our Court's 1990 decision in *Commonwealth v. Hickson*, 586 A.2d 393 (Pa. Super. 1990), Appellant maintains:

> [W]hen the jury found [Appellant] not guilty of an attempt to commit criminal homicide, the jury determined that [he] was not guilty of committing a malicious killing. [Appellant] was charged with violating 18 Pa.C.S. § 2702(a)(1), which defines aggravated assault as an 'attempt to cause serious bodily injury to another or causing such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.' 18 Pa.C.S. § 2702(a)(1). It was necessary for the Commonwealth to show that the shooting of Mr. Desman Johnson had been done with malice. *See Hickson*, 586 A.2d at 396. Malice 'exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty.' *Id.*

- 4 -

> [(internal citation omitted)]. A conviction for aggravated assault requires a shooting, which was done intentionally, knowingly or recklessly. **See Hickson**, 586 A.2d at 396. Therefore, the shooting required evidence of malice. **Id.** In the first trial, the jury acquitted [Appellant] of attempt to commit criminal homicide, a charge that requires a finding of malice.

**Id.** at 12-13 (original brackets omitted).

The Commonwealth initially responds that Appellant waived his double jeopardy challenge for failing to include the issue in his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Commonwealth's Brief at 8-10. We reject this contention. "[M]ere silence by a defendant or lack of a specific objection will not amount to a waiver of defendant's 'very important constitutional right' of protection from double jeopardy." **Commonwealth v. McCord**, 700 A.2d 938, 942 (Pa. Super. 1997). Double jeopardy claims implicate the legality of sentence and, therefore, are not subject to waiver. **See Commonwealth v. Andrews**, 768 A.2d 309, 313 (Pa. 2001), citing **Missouri v. Hunter**, 459 U.S. 359, 366 (1983). Hence, we will address Appellant's double jeopardy claim as it directly implicates the legality of Appellant's sentence.

Our standard of review is as follows:

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*.

**Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008) (quotations, ellipsis, and internal citations omitted).

"The prohibition against double jeopardy set forth in Article I, § 10 of the Pennsylvania Constitution and the Fifth Amendment to the Constitution of the United States of America protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction and multiple punishments for the same offense." **McCord**, 700 A.2d at 941. The **McCord** Court has explained:

> As a general rule, a mistrial because of a jury's inability to reach a verdict does not implicate the principles of double jeopardy, and retrial is not prohibited. However, an exception to that rule exists when a defendant was acquitted or convicted on some charges in the same trial, and the same jury was unable to reach a verdict on other charges. [This Court has previously determined that] retrial of charges on which a jury has been unable to agree is not barred unless the jury made findings on one or more other charges which must be interpreted as an acquittal of the offense for which the defendant is to be retried.

**McCord**, 700 A.2d at 946 (internal citations and quotations omitted).

The test for determining whether double jeopardy applies is the same test utilized to decide sentencing merger. **Commonwealth v. Davidson**, 938 A.2d 198, 218, (Pa. 2007); **see also Commonwealth v. Jones**, 912 A.2d 815, 823 (Pa. 2006) (plurality) (Pennsylvania courts "employ[] the same analysis in double jeopardy and sentencing merger cases [under the] function of the Double Jeopardy Clause's prohibition ... which protects against both successive punishments and successive prosecutions for the same offense.").

- 6 -

On February 7, 2003, the Pennsylvania Legislature enacted the merger doctrine at 42 Pa.C.S.A. § 9765, which provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

Thereafter, in **Commonwealth v. Baldwin**, 985 A.2d 830 (Pa. 2009), our Supreme Court stated:

> Generally, the doctrine of merger is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction. If the legislature were to tell us that crime A merges into crime B, the problem would not arise, for the legislative intent would be manifest. It is in cases where the legislature has not given direction that we must devise a rule.
>
> *                *                *
>
> [T]he legislature has provided [] clear direction by its enactment of Section 9765. The statute makes the legislature's intent with respect to merger manifest. That intent focuses solely on the elements of the offenses for which a criminal defendant has been convicted.

**Baldwin**, 985 A.2d at 835–836 (original emphasis and internal citation omitted). Accordingly, looking at the plain language of Section 9765, the **Baldwin** Court ultimately determined the "statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise

from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Id.* at 833.

In this case, there is no dispute that the crimes arose from a single criminal act, Appellant's shooting of Johnson. Thus, we look at the statutory elements of aggravated assault to determine whether they are subsumed by the elements of attempted murder. The relevant provision of the aggravated assault statute, under which Appellant's conviction resulted, states: "A person is guilty of aggravated assault if he [...] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Where the victim suffers serious bodily injury,[3] the Commonwealth is not required to prove specific intent." *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (internal citations omitted). Instead, the Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. *Id.* "For the degree of recklessness contained in the aggravated assault statute to occur,

---

[3] "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Here, the victim was struck with multiple bullets that passed entirely through his body; "he had two holes in his back, two holes in his abdomen, two holes in his thighs, and one in his left groin." N.T., 6/2/2015, at 188. The victim had damage to his bladder and iliac vein, which required surgical intervention. *Id.* at 186-187.

- 8 -

the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Id.*

Whereas, a person commits criminal attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). Murder or "a criminal homicide [...] is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a).[4]

We conclude that all of the elements of aggravated assault are not included in the statutory elements of attempted murder. As previously stated, in order to be convicted of attempted murder, the Commonwealth is required to show an intent to kill. When the first jury acquitted Appellant of attempted murder, it necessarily determined that an intent to kill was not proven. However, in order to prove aggravated assault, the Commonwealth needed only to prove that Appellant acted recklessly and that the shooting took place under circumstances that almost assured that serious bodily injury would ensue. The statutory elements for the crimes of attempted murder and aggravated assault are not the same. Thus, we discern that

---

[4] There can be no attempt to commit second- or third-degree murder. **See Commonwealth v. Griffin**, 456 A.2d 171, 177, (Pa. Super. 1983) ("While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results; it does not follow that those persons would be guilty of *attempted* murder if a killing did not occur."). "[I]n order to convict a person of attempted murder, an intent to kill must be shown." *Id.* at 178.

double jeopardy did not preclude the Commonwealth from prosecuting Appellant for aggravated assault, in a second trial, despite an earlier acquittal for attempted murder. Accordingly, there is no merit to Appellant's first claim.

In his next issue presented, Appellant avers the trial court erred by allowing Officer Matthew Barr to speculate about actions taken by Appellant at the scene of the crime. Appellant's Brief at 14-16. Appellant complains it was error to permit Officer Barr to narrate the course of events transpiring as the jury watched a surveillance video entered into evidence by the Commonwealth. *Id.* at 14. More specifically, Appellant claims that Officer Barr, who was not qualified as an expert and did not have personal knowledge of the incident, speculated that the surveillance video showed Appellant retrieve what the officer believed was a firearm, from underneath the front seat of a car prior to the shooting. *Id.* at 15-16.

"The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous". *Commonwealth v. Ivy*, 146 A.3d 241, 250 (Pa. Super. 2016). We have previously determined that it was not an abuse of discretion to allow a detective to offer his observations about images depicted in a surveillance video under Pa.R.E.701, which governs the admission of lay-person testimony. *See Commonwealth v. Brown*, 134

A.3d 1097, 1106 (Pa. Super. 2016). Additionally, we note that after Officer Barr offered his testimony, the trial court cautioned the jurors to draw their own conclusions of what the video depicted. N.T., 6/1/20115, at 112. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011). Moreover, at trial, three eyewitnesses, Jameel Fields, Denise Gardner, and Regina Fields, identified Appellant as the shooter. N.T., 6/2/2015, at 61, 106, and 149. Accordingly, any error in admitting Officer Barr's testimony that he believed Appellant had a gun was harmless, considering there was other evidence that Appellant held and then shot a firearm. *See Commonwealth v. Wilson*, 147 A.3d 7, 24 (Pa. Super. 2016) (citation omitted) (improperly admitted evidence merely cumulative of other evidence and had no effect on verdict; therefore, any error in admitting testimony harmless).

In his third and fourth allegations of error, Appellant claims that the evidence was against the weight and sufficiency of the evidence, respectively. Appellant's Brief at 17-19. We will examine the sufficiency of the evidence claim first. In his appellate brief, Appellant does not set forth the elements of his crimes for which he was convicted or establish what element(s) the Commonwealth failed to establish, which results in waiver in a sufficiency challenge. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding the appellant's sufficiency claim waived where his argument was underdeveloped and he did not set forth the elements of the crimes for which he was convicted or which specific elements were not met).

Regardless, Appellant's claim lacks merit. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa. Super. 2011). Upon review of the parties' briefs, the relevant law, and the trial court's opinion, we conclude there was sufficient evidence to support Appellant's convictions. Three eyewitnesses identified Appellant as the shooter. N.T., 6/2/2015, at 61, 106, and 149. The trial court determined that the jury was free to infer that Appellant intended to cause serious bodily injury and disregarded the safety of others by brandishing a firearm and firing it at the victim's vital body parts while a large crowd was gathered. Trial Court Opinion, 1/21/2016, at 7-11. These determinations support Appellant's convictions for aggravated assault and REAP. Because Appellant used a firearm to shoot the victim, the trial court found there was sufficient evidence to support his PIC conviction. Finally, the Commonwealth presented evidence that Appellant did not have a license to carry a firearm. N.T., 6/2/2015, at 245-246. We discern no error of law in rejecting Appellant's sufficiency challenge.

Finally, we address Appellant's contention that his convictions were against the weight of the evidence. More specifically, he claims the verdict shocks the conscience of the court because the victim did not see Appellant fire the gun, the surveillance video did not show him holding a firearm, the

Commonwealth did not submit ballistics evidence to show there was gunpowder residue on Appellant's person or clothing, and there were inconsistencies in Denise Johnson's testimony. Appellant's Brief at 17.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the [factfinder] has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013).

Here, the trial court determined Appellant's convictions were not against the weight of the evidence. Again, three eyewitnesses identified Appellant as the shooter and the trial court concluded the jury credited the witnesses' testimony. Trial Court Opinion, 1/21/2016, at 15. In further support, ballistic evidence showed that Brian Stokes shot his firearm into the air and eliminated him as the one who shot the victim. *Id.* As seen on the surveillance video, Appellant fled the scene of the crime. *Id.* Flight indicates a consciousness of guilt, which a factfinder may consider. *See*

*Commonwealth v. Dent*, 837 A.2d 571, 57 (Pa. Super. 2003). There is no dispute that the victim was seriously injured following the shooting. Based upon our deferential standard of review, we discern no abuse of discretion in denying relief on Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017