**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John RIVERA, III, Appellant.**

Superior Court of Pennsylvania.

Argued April 1, 1998.

Filed June 9, 1998.

Bradley Schutjer, Harrisburg, for appellant.

Donna L. Brightbill, Assistant District Attorney, Lebanon, for the Commonwealth, appellee.

Before JOHNSON, STEVENS and OLSZEWSKI, JJ.

JOHNSON, Judge:

We are asked to decide whether defense counsel's mere asking of a question to a Commonwealth witness at trial, without more, would support the trial court's finding of "manifest necessity" to declare a mistrial, where the issue is witness credibility and the witness has not responded to the question. We hold that manifest necessity did not exist to justify the trial court's declaration of a mistrial. Therefore, we reverse the trial court's denial of John Rivera's motion to dismiss the criminal information against him

following the trial court's grant of a mistrial upon the Commonwealth's motion, and order that Rivera be discharged on the basis that Rivera's re-prosecution would violate the principles of double jeopardy.

Rivera was charged with terroristic threats, simple assault, recklessly endangering another person, disorderly conduct and a summary charge of careless driving. The charges arose from an incident that occurred on March 20, 1996, at approximately 7:30 a.m. on Interstate 81 in Lebanon County. At trial, Vance Keith Via, the Commonwealth's only witness, testified that Rivera's vehicle approached Via's vehicle from behind in the passing lane and flicked its high beams on and off. N.T., February 4, 1997, at 12. This caused Via to move his vehicle into the right lane in order to permit Rivera to pass him in the left lane. *Id.* When Rivera pulled his vehicle along the side of Via's vehicle, he aimed a handgun at Via, and mouthed the words, "Bang, you are dead." *Id.* at 12–13. Via further stated that Rivera jerked his hand as if he were going to fire the weapon and then drove away at a high rate of speed. *Id.* at 13.

During cross-examination of Via regarding this incident, defense counsel asked Via: "[D]o you hang out in the bar called The Village?" *Id.* at 41. The Commonwealth immediately objected and, during a sidebar discussion, expressed its concern regarding the prejudicial effect this question might have on the Commonwealth's case. *Id.* at 42. In response, defense counsel stated:

I will make an offer. I will make it easy. I am going to put a witness on the stand who has had two conversations with Mr. Via about this incident. And during—both of these conversations—both of these conversations took place in a bar called The Village in Grantville, giving him a chance to refute the statements before I bring in my witness.

And I am going to ask him about conversations he had with this witness regarding this incident.

*Id.* Following this offer, the court stated that defense counsel should have phrased the question more appropriately and the Com-

monwealth then moved for a mistrial. *Id.* at 42–43. The Commonwealth contended that the question was inflammatory and that "when you hear that question you think of a million other things, none of which has to do with what happened on Route 81 on March 20th, 1996." *Id.* at 43. The trial court granted the mistrial and dismissed the jury, despite defense counsel's obvious disagreement with such a result. *Id.* at 43–46. In doing so, the court stated that: "the only inference this Court can draw is that he is a drunkard, and that is not proper. It is too prejudicial for me to permit it to go on." *Id.* at 45.

Thereafter, Rivera filed a motion to dismiss the information arguing that principles of double jeopardy barred a subsequent prosecution because "manifest necessity" did not exist to justify the trial court's declaration of a mistrial. The court denied Rivera's motion stating that the "question was prejudicial, out of context and so inflammatory at the time as to necessitate the Court declaring a mistrial." Trial Court Opinion, Kline, J., July 7, 1997, at 2. This appeal followed.

■ Rivera argues that the trial court erred in failing to grant his motion to dismiss the criminal information. We are constrained to agree. Pursuant to principles of double jeopardy, whether the Commonwealth can pursue a new trial against a defendant after a mistrial has been declared without the defendant's request or consent depends upon the existence of a manifest necessity for a mistrial. Pa.R.Crim.P. 1118(b); *Commonwealth v. Diehl*, 532 Pa. 214, 615 A.2d 690, 691 (1992). Where the defendant does not consent to the mistrial, trial courts should be especially reluctant to declare a mistrial. *Commonwealth v. Bradley*, 311 Pa.Super. 330, 457 A.2d 911, 914 (1983), *aff'd*, 504 Pa. 175, 470 A.2d 524 (1984). Rather, "[t]he determination of whether to declare a mistrial after jeopardy has attached is one of utmost importance since the defendant has a substantial interest in having his fate determined by the jury first impaneled." *Commonwealth v. McCord*, 700 A.2d 938, 943 (Pa.Super.1997). There is no rigid rule for determining whether manifest necessity for a mistrial existed; rather, each case must

" 'turn on the particular facts.' " *Commonwealth v. Balog*, 395 Pa.Super. 158, 576 A.2d 1092, 1095 (1990), quoting *Commonwealth v. Bolden*, 472 Pa. 602, 638, 373 A.2d 90, 107 (1977). However, the failure to consider less drastic alternatives to a mistrial "creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury." *Diehl, supra*, at 217, 615 A.2d at 691. "[A]ny doubt relative to the existence of manifest necessity should be resolved in favor of the defendant." *Id.*

■ Initially, we address the Commonwealth's contention that Rivera has waived this issue by failing to expressly object at trial to the court's declaration of a mistrial. We do so despite the fact that the Commonwealth first raised the issue of waiver at oral argument and makes no mention of it in its Brief to this Court. In doing so, we do not find that Rivera has waived his double jeopardy claim as Rivera's mere acquiescence to the court's declaration of a mistrial "is not sufficient to waive his double jeopardy claims." *McCord, supra*, at 942. The record reflects that Rivera never consented to the mistrial; rather, it is apparent that Rivera, through his counsel, repeatedly attempted to make an offer to the court to explain his reasons for asking the question in order to prevent the court from declaring a mistrial. N.T., *supra*, at 42–45. *Compare McCord, supra* (noting that while defendant did not object to a mistrial, he did not waive his double jeopardy claim by his mere acquiescence to the trial judge's *sua sponte* declaration of a mistrial) *with Commonwealth v. Phillippi*, 442 Pa.Super. 198, 658 A.2d 1368, 1370 (1995) (holding that defendant waived his double jeopardy claim where he failed to object to the declaration of a mistrial *and* consented to it after alternatives were raised, discussed, and rejected). Accordingly, we reject the Commonwealth's argument and proceed to reach the merits of Rivera's double jeopardy claim.

We find the analysis set forth in *Balog, supra*, applicable to the facts before us.

In *Balog*, the defendant was charged with several offenses arising out of an alleged incident of sexual assault. An alleged accomplice was also charged with the same offenses. The accomplice had been tried at an earlier date and convicted of corruption of minors, but acquitted on all of the other offenses. During cross-examination, the assistant district attorney asked the defendant, Balog, whether he had previously told a state trooper that he could not recall having fooled around with the victim. When asked whether he was denying that he made such a statement to the trooper, Balog responded:

> A. Of course, I am denying it. I didn't say I did anything with her. Charlie [the accomplice] was not guilty; why should I be found guilty?

*Id.* 576 A.2d at 1094. Based upon this response, that strongly implied to the jury that he, Balog, should be acquitted, as was his accomplice, the Commonwealth moved for a mistrial. Over defense counsel's objection, the court declared a mistrial. *Id.* at 1093–94.

On appeal, this Court stated that while it was the defendant's conduct which caused the court to declare a mistrial, defendant's actions were not intentionally designed to provoke the Commonwealth to request a mistrial; rather, the defendant was under pressure of cross-examination when he blurted out the statement. *Id.* at 1097. More importantly, we noted the effect of the trial court's failure to consider the less drastic alternative of a curative instruction before declaring a mistrial: "Failure to consider alternatives before declaring a mistrial raises doubt as to the existence of manifest necessity to terminate the trial. This doubt must be resolved in favor of Appellant who opposed such a declaration." *Id.* at 1098.

■ Turning to the case presently before us, we conclude that manifest necessity did not exist to justify the trial court's declaration of a mistrial. As in *Balog*, we find no evidence of intentional conduct on the part of defense counsel to provoke the Commonwealth to request a mistrial. Rather, defense counsel offered an adequate explanation for the question. *See N.T.*, *supra*, at 45. Specifically, counsel stated that "[m]y witness will testify that on the 12th she had a half hour conversation at The Village Bar with Mr. Via. During that time he consumed three double shots of Jack Daniels and two beers—." *Id.*

It may well be true that defense counsel could have phrased the question in a more appropriate manner. However, we cannot agree that the *question* was so highly prejudicial as to give rise to a finding of manifest necessity. *See Balog, supra*, at 1097 (noting that the defendant's reference to a co-conspirator's prior acquittal was not so prejudicial as to require a *per se* mistrial). Here, the Commonwealth's objection was to the form and content of the *question* and not to any response by the witness. The sidebar discussion took place without any response having been given by the witness to the question. Here, Via was never given the opportunity to respond to the question. Had he answered "No," there could not have been any negative inference. Our supreme court has declared: "[I]t is well settled in the law that attorneys' statements or questions at trial are not evidence." *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (1995), citing *Commonwealth v. Green*, 525 Pa. 424, 461, 581 A.2d 544, 562 (1990). Thus, had the trial court given a curative instruction in the face of no response by the witness, any possible negative inference by a juror would surely have been overcome. *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 414 (1997), *petition for cert. filed* February 12, 1998 (jury presumed to follow court's instruction; this includes an instruction to the jury that certain matters are not to be considered).

The trial court in this instance did not seriously consider directing counsel to rephrase the question or the absolute need for a curative instruction. Instead, after a very brief discussion with the Commonwealth and defense counsel during sidebar, the trial court found that only a mistrial would remedy the prejudicial effect of defense counsel's question because the case turned upon the credibility of Via versus the credibility of Rivera. N.T., *supra*, at 43. In fact, the trial judge stated his unequivocal intention to grant the mistrial even before he made any

mention of a possible curative instruction. *Id.* While we are cognizant of the fact that this case turns upon whether a jury would find Via or Rivera more credible, we are not convinced that manifest necessity existed based on this concern. *See Balog, supra*, at 1098 (noting that a trial court may not presume that a jury will disregard judicial instructions admonishing them to disregard improper evidence).

Moreover, the failure to seriously consider less drastic alternatives before declaring a mistrial casts further doubt as to the existence of manifest necessity to declare a mistrial. *Diehl, supra.* The Commonwealth has not directed our attention to any case where the mere asking of the *question*, without more, would support a finding of manifest necessity, where the issue is witness credibility and the witness has not responded to the question. We do not have before us a case where the response of the witness has damaged that witness' credibility before the jury.

We do not believe that the court adequately considered its opportunity to direct that the question be rephrased or to correct any possible negative inference arising from the question. Moreover, we cannot find from the record that the court gave due consideration to Rivera's significant interest in whether or not to take the case from the jury. Accordingly, we will resolve this doubt as to the propriety of the exercise of the trial judge's discretion and the existence of manifest necessity in favor of Rivera. *Id.* Therefore, we hold that the trial court abused its discretion in declaring a mistrial. Rivera's motion to dismiss the information should have been granted, as retrial would violate the principles of double jeopardy. *Id.*

Order denying motion to dismiss the information **REVERSED.** Case **REMANDED** with directions that John Rivera III be **DISCHARGED.** Jurisdiction **RELINQUISHED.**

OLSZEWSKI, J., joins and files a concurring opinion.

STEVENS, J., files a dissenting opinion.

STEVENS, Judge, dissenting:

The Majority, after careful consideration, finds that "manifest necessity" did not exist to justify the trial court's declaration of a mistrial, and reverses the trial court's denial of defendant's motion to dismiss the criminal information against him and further orders that defendant be discharged on the basis that defendant's reprosecution would violate the principles of double jeopardy. I respectfully dissent.

In the instant case, I would affirm the trial court on the basis that there was "manifest necessity" for the declaration of a mistrial.

There is no question, as the Majority correctly notes, that whether the Commonwealth can pursue a new trial against a defendant after a mistrial has been declared without the defendant's request or consent depends upon the existence of a "manifest necessity" of a mistrial. *Commonwealth v. Diehl*, 532 Pa. 214, 216, 615 A.2d 690, 691 (1992).

In the instant case, it would facilitate appellate review had the trial court made a more detailed record as to the court's considerations of options less drastic than a mistrial. However, in the context of the case before the trial court, I find that the trial judge did consider alternatives to a mistrial and rejected same.

The trial judge, not the appellate court, is in a position to observe the demeanor of the witnesses, the emotional context of testimony before the jury, the tenor of counsel during questioning, and the over-all atmosphere in the courtroom at the time of trial. I do not agree with the majority opinion requirement that a trial court must direct counsel to rephrase a question prior to the trial court making a determination that there is need for a mistrial. Majority Opinion pg. 1139. Here, the question posed by defense counsel, "Do you hang out in the bar called The Village?" was, as the trial court stated, " . . . too prejudicial for me to permit it to go on . . . " (N.T. 2/4/97 pp. 41, 45). It is obvious that the trial court thus found the question so prejudicial that it would have been futile to direct counsel to rephrase the question.

Moreover, defense counsel failed to object.[1] Rather, defense counsel merely said "So what do we do, come back next month?" (N.T. 2/4/97 p. 45). Again, in the context of the within matter, it is obvious that defense counsel did not question the trial court's conclusion that there was "manifest necessity" for the declaration of a mistrial. I would take such a factor into consideration in reviewing whether or not there was "manifest necessity" while acknowledging that "mere acquiescence to the *sua sponte* grant of a mistrial by the trial judge is not sufficient to waive his double jeopardy claims . . .". *Commonwealth v. McCord,* 700 A.2d 938, 942 (Pa.Super.1997).

A fair reading of the record in the instant case supports the conclusion that the trial judge did consider other options and rejected same. Therefore, his finding of "manifest necessity" was proper, and I would affirm the decision of the trial court.

OLSZEWSKI, Judge, concurring:

I write separately to express my profound regret in today's decision. I have carefully examined the record and am unable to discern why the court found a mistrial necessary. Because the trial court reached this precipitous result, we are placed in the difficult position of denying society an opportunity to seek justice against appellant. We are compelled to do so, however, by clear Pennsylvania and Federal precedent. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth v. McCord,* 700 A.2d 938 (Pa.Super.1997). Thus, I join the majority most reluctantly. I only hope today's decision will help deter repetitions of this mistake.

1. The majority relies heavily on *Commonwealth v. Balog,* 395 Pa.Super. 158, 576 A.2d 1092 (1990). But in that case, there were specific objections by defense counsel to the grant of a mistrial.