J-A15007-21

2021 PA Super 206

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERNEST GOODS | : | |
| | : | |
| Appellant | : | No. 55 EDA 2020 |

Appeal from the Order Entered November 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001306-2017

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                                      Filed: October 13, 2021

Ernest Goods appeals from the order that denied his motion to dismiss based upon double jeopardy.[1]  We reverse the order and remand with directions that Appellant be discharged.

The trial court offered the following summary of the history of this case.

> On January 12, 2017, Appellant was arrested and charged with possessing with the intent to deliver a controlled substance, knowingly and intentionally possessing a controlled substance, illegally possessing marijuana, illegally possessing a firearm, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia.
>
> On February 26, 2019, trial commenced on the above charges.  On February 27, 2019, this court granted Appellant judgment of acquittal on the charge of possessing with the intent to deliver a controlled substance.  On February 28, 2019, this

---

[1] Since the trial court did not make a finding that Appellant's motion was frivolous, the interlocutory order was immediately appealable as a collateral order.  **See Commonwealth v. Gross**, 232 A.3d 819, 832 (Pa.Super. 2020) (*en banc*); Pa.R.Crim.P. 587(B)(6).

court granted Appellant a directed verdict on the charge of knowingly and intentionally possessing a controlled substance, marijuana, and [the jury] was unable to reach a unanimous verdict on the firearms charges. This court therefore declared a mistrial on the firearms charges and ordered a new trial for these alleged crimes. On August 13, 2019, Appellant's retrial began on the sole charge of illegally possessing a firearm . . . . During defense counsel's cross-examination of the Commonwealth's first witness, this court declared a mistrial.

On September 6, 2019, Appellant filed a motion to dismiss the case on grounds of double jeopardy. On November 21, 2019, following a hearing, this court entered an order denying Appellant's motion. On December 16, 2019, Appellant filed a notice of appeal of this court's order, and on February 27, 2020, Appellant filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion, 6/11/20, at 1-2 (citations and unnecessary capitalization omitted). Thereafter, the trial court authored a Pa.R.A.P. 1925(a) opinion supplying the reasoning for its denial of Appellant's motion that it failed to put on the record at the time of the decision as required by Pa.R.Crim.P. 587(B)(3) and (4).[2]

_____

[2] The trial court also neglected to advise Appellant of his appellate rights in accordance with Pa.R.Crim.P. 587(B)(5) and (6). **See** Trial Court Opinion, 6/11/20, at 11-12 n.2. However, as noted in its opinion, Appellant was not prejudiced by this error, as he timely filed the appropriate appeal.

We further note that Appellant does not claim that the trial court denied him the opportunity to present evidence at the hearing, or that he was prejudiced by the trial court's failure to comply with the requirements of Rule 587(B)(3) directing that it enter on the record a statement of findings of fact and conclusions of law. **Cf. Commonwealth v. Kemick**, 240 A.3d 214, 221 (Pa.Super. 2020) (vacating order and remanding for a new hearing where the trial court did not allow the defendant to put on his witnesses or otherwise create a record, which precluded this Court from conducting a merits review

*(Footnote Continued Next Page)*

Appellant presents the following question for our consideration:

> Did the lower court abuse its discretion when it denied Appellant's motion to dismiss for double jeopardy grounds as there was no manifest necessity to abort a (second) trial over the defense objection where the ostensible reason for the declaration of mistrial was two likely proper questions posed by the defense during cross, objections to the questions were sustained and never answered, and where the court failed to fashion a less drastic and detrimental remedy?

Appellant's brief at 4.

We begin with a review of the applicable legal principles. "The question of whether a defendant's constitutional right against double jeopardy would be infringed by a successive prosecution is a question of law. When presented with a question of pure law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Gross**, 232 A.3d 819, 834-35 (Pa.Super. 2020) (*en banc*) (cleaned up).

Both the federal and state constitutions contain double jeopardy clauses that are "grounded on the concept that no person should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense." **Commonwealth v. Banks**, 253 A.3d 768, 777 (Pa.Super. 2021) (cleaned up). Our Supreme Court has explained that, "because of the double jeopardy clause's policy of prohibiting multiple trials, retrial is only grudgingly allowed, and is limited to cases in

---

of the double jeopardy issue). Furthermore, our review of Appellant's claim is not impeded by this oversight by the trial court.

which the defendant consented or the declaration of a mistrial was manifestly necessary." **Commonwealth v. Wardlaw**, 249 A.3d 937, 949 (Pa. 2021) (cleaned up). "A mistrial is an extreme remedy only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial." **Commonwealth v. Risoldi**, 238 A.3d 434, 458 (Pa.Super. 2020).

Consequently, "to determine whether double jeopardy bars a re-trial following a *. . .* grant of a mistrial, we must determine whether manifest necessity existed for the mistrial." **Commonwealth v. Kennedy**, 218 A.3d 420, 424 (Pa.Super. 2019). Manifest necessity exists "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the [non-moving party] of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Cash**, 137 A.3d 1262, 1273 (Pa. 2016) (internal quotation marks omitted). Hence, before deciding whether a mistrial is necessary, "the court must discern whether misconduct or prejudicial error actually occurred[.]" **Commonwealth v. Baldwin**, 158 A.3d 1287, 1293 (Pa.Super. 2017). "A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." **Cash**, **supra** at 1273 (cleaned up).

We have observed that, "as a general rule, the trial court is in the best position to gauge potential bias and deference is due the trial court when the grounds for the mistrial relate to jury prejudice." **Commonwealth v. Walker**, 954 A.2d 1249, 1256 (Pa.Super. 2008). This is because "the trial

- 4 -

judge is the best arbiter of prejudice, because he or she has had the opportunity to observe the jurors, the witnesses, and the attorneys and evaluate the scope of the prejudice." *Id*.

In conducting our review of the trial court's determination, we "do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial." *Kennedy*, *supra* at 424.

> Whether a trial court should grant a mistrial after jeopardy has attached is not a decision to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Further, prior to granting a mistrial, a trial court should consider whether less drastic measures are available. We have stated that failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and may be grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. When determining whether manifest necessity exists any doubt must be resolved in favor of the defendant.

*Id*. (cleaned up).

With these principles in mind, we next examine the events leading to the declaration of a mistrial. The Commonwealth explained to the jury in its opening statement that the incident in question began when the police received a radio call that a man who was dressed in dark clothing had a gun in the area of a certain intersection in the City of Philadelphia. Officers Joseph DiGangi and John Duaime of the Philadelphia Police Department went to the scene and saw Appellant there with three other men. When Appellant spied the officers, he fled on foot. Officer Duaime chased Appellant and eventually

tackled him, observing a firearm magazine fall from Appellant's pocket. Officers subsequently recovered a gun with an extended magazine into which the magazine recovered from Appellant also fit. *See* N.T. Trial, 8/13/19, at 22-24.

Appellant's version of events, as explained in his opening statement, was that he was walking to his sister's house, minding his own business, when, right before he reached his destination he was tackled, handcuffed, and "stomped" by police, resulting in a broken leg. Appellant's theory of the case was that he was on trial because he just happened to meet the general description and location of the man the police were looking for, and was just close enough to the gun that was later found 200 feet away, in another yard, on the other side of an eight-foot-high fence. *Id*. at 28-29.

The Commonwealth's first witness was Officer Duaime, who testified on direct examination consistent with the Commonwealth's opening statement. *Id*. at 32-48. Officer Duaime further explained that, since he had sustained some cuts and scrapes during the arrest, as a result of employing force against Appellant, he prepared a use of force memorandum following the incident. That writing reflected that Appellant was transported to the hospital following the arrest due to injuries to his legs. *Id*. at 53. Officer Duaime also testified as to a number of the Commonwealth's exhibits, including images of the scenes of the encounter and chase. *Id*. at 54-60.

Appellant's counsel began the cross-examination of Officer Duaime by delving into whether the initial radio call had been based upon a verified or anonymous tip, and the fact that Officer Duaime had been with the force for barely one year before Appellant's arrest. *Id*. at 62-68. Thereafter, the defense elicited testimony indicating that the radio alert that brought the officers to Appellant referenced merely a black male in dark clothes at a certain intersection, and did not offer specifics concerning the suspect's clothing, height, complexion, facial hair, or other identifying characteristics that described Appellant at the time the officers encountered him. *Id*. at 74-76, 87. Officer Duaime was then walked through the series of events, from his initial encounter with Appellant to the discovery of the firearm, through detailed questioning and the use of a map. *Id*. at 77-100.

Defense counsel also reviewed officer Duaime's use of force memorandum and confirmed that Appellant had sustained a broken leg during this encounter. *Id*. at 100-03. Officer Duaime was twice asked if he had stomped on Appellant, but the Commonwealth's objections were sustained and the questions were left unanswered. *Id*. at 103. Next, counsel questioned Officer Duaime concerning the absence from the file of a form that was supposed to be created when someone was transported to a hospital, and some of the information about Appellant that was contained in forms that were included. *Id*. at 103-08. Then, the following exchange occurred:

> Q. And finally, Officer Duaime, you're currently under IA investigation for your Facebook post?

[COMMONWEALTH]:     Objection, Your Honor.

THE COURT:        Sustained.

May I see counsel at sidebar?

[Whereupon the jurors and Officer Duaime left the courtroom.]

[COMMONWEALTH]:     Your Honor, my request at this point is for this to be declared a mistrial.

THE COURT:        And your grounds?

[COMMONWEALTH]:     Your Honor, based on the blatant use of the Facebook questioning, the fact that this is a direct assassination on the character of this particular officer, we did pass over all of the disclosure for all of the officers that required disclosure from my office and he was not one of those people.  The fact that the defense did not have a motion to bring in this -- this prior bad acts testimony under 404(b) Character Evidence and the fact that it was not brought in a motion *in limine* at all to include this type of evidence.

THE COURT:        Who did you pass the disclosures to?

[COMMONWEALTH]:     I passed those directly to Miss Sen.

THE COURT:        And was that regarding officers who were on the witness list?

[COMMONWEALTH]:     There was one officer that is on the witness list that had a disclosure that has nothing to do with any -- any relevant portion of this trial.

THE COURT:        [Defense counsel].

[DEFENSE COUNSEL]:  Thank you, Your Honor.

As Your Honor is aware, under Pennsylvania Rule of Criminal Procedure 404, the defense does not have to file a motion when talking about other acts.  The only people that have to file a motion and give notice are, in fact, the government.

In addition, the government was on notice because, by [the Commonwealth]'s own admission, she told me yesterday that she believed that I would be receiving information about Officer Duaime['s] Facebook post in the Plain View Project.

Further, what the case law says when referring to any other act that would make a fact more probable than not from the side of the defense and in which we opened on, they broke [Appellant's] leg, which is a fact.

That any relevant fact which would include Officer Duaime's public statements endorsing violence against criminal defendants and making racially tinged remarks, I should be allowed to ask those questions.

I do not believe that my asking a question that was never answered requires a mistrial.

It is my belief that because Officer Duaime didn't answer and the Commonwealth had asked for a curative and simply saying disregard that question, we're not here to discuss Facebook post or whatever it is, that would be fine. But the fact of the matter is, Commonwealth is aware of these posts, Your Honor, and –

THE COURT:     Aware of what posts?

[DEFENSE COUNSEL]:  The posts that Officer Duaime made.

THE COURT:     What posts are those?

[DEFENSE COUNSEL]:  So there are several posts, it is on the Plain View Project, made by Officer Duaime, under his own name, attributed to him. And we can call in [an attorney] from [the District Attorney's] Conviction Integrity Unit in SIU to explain that, in fact, they are aware of these posts –

THE COURT:     Is he part of the Facebook, the racial group –

[DEFENSE COUNSEL]:  Yes. He is part of the 323 [active-duty group participants].

- 9 -

THE COURT:     Okay.  And what is the -- some of those people were fired?

[DEFENSE COUNSEL]:  So two were fired.  Seven resigned, 72 are on desk duty.

THE COURT:     Okay.

[DEFENSE COUNSEL]:  The rest are being investigated.

THE COURT:     So his investigation is pending?

[DEFENSE COUNSEL]:  Well, he is probably currently under investigation.

THE COURT:     Okay.

[DEFENSE COUNSEL]:  And that was my only question.

THE COURT:     Okay. And you didn't raise this pretrial because you didn't think you had to, correct, based on 404?

[DEFENSE COUNSEL]:  Yes, Your Honor.

THE COURT:     Anything else?

[DEFENSE COUNSEL]:  No.

THE COURT:     Okay.  Motion granted.

*Id*. at 109-13.

The trial court did not elaborate upon its ruling when issued.  Nor did it offer an explanation on the record when it denied Appellant's motion to dismiss.  *See* N.T. Motion, 11/21/19, at 14.  However, the court offered the following rationale in its Pa.R.A.P. 1925(a) opinion:

> Here, defense counsel intended to use the widespread investigation of police officers' Facebook posts as evidence that Officer Duaime arrested and beat Appellant because of his race. However, there is no connection whatever between this case and

- 10 -

any Internal Affairs investigation involving Officer Duaime's social media use. The investigation was completely irrelevant. It does not remotely establish that Officer Duaime had a "bias" or "motive" to falsely arrest or beat Appellant.

Appellant's motion to dismiss confirmed the complete irrelevance of Officer Duaime's Facebook posts. Appellant attached merely five Facebook comments to his motion. Officer Duaime purportedly made two posts on April 13, 2013, in response to a news story of a bomb-strapped person who was surrounded in his home by police officers. Officer Duaime purportedly criticized the media coverage in one comment, and in another comment he expressed his desire "to get just 10 mins with" presumably the suspect whom he could use as "a good punching bag." In the next Facebook post, dated July 8, 2014, Officer Duaime purportedly responded to a news story in which the mother of a "cop-killer" blamed the deceased officer for getting shot. Officer Duaime purportedly called the cop-killer and his defenders "scumbags" and wrote that if the killer's mother believed her son was "a good person after what he did," then she could "burn in hell with him."

In the final Facebook post, dated April 26, 2017 - *i.e.*, after Appellant's arrest in this case - Officer Duaime responded to a news report that someone shot a State Trooper outside a Wawa and then barricaded himself inside a home. Officer Duaime purportedly remarked that he was "praying" for the victim and "everyone else still out there with this animal," and to "[p]lease be safe." Officer Duaime also purportedly wrote, "Damm this makes me so angry."

The above social media posts plainly have no relevance to this case under Rule 404(b) or any other rule of evidence. They have no bearing on Officer Duaime's arrest of Appellant. Moreover, defense counsel already knew that Officer Duaime was not even a police officer when he purportedly made the Facebook posts from 2013 and 2014, as the officer testified on cross examination that he did not join the force until June 2015. The officer purportedly made the remaining two posts after he already arrested Appellant.

There simply is no nexus, let alone a "close factual nexus," between the Facebook posts and Officer Duaime's conduct in

arresting Appellant or testifying at trial. Defense counsel's needless raising of the issue was therefore wholly unjustified.

. . . .

By the time of trial in this case, the Plain View Project had received nationwide media coverage. The endeavor resulted in the termination and other sanctioning of multiple Philadelphia police officers for making Facebook posts that were racist, homophobic, bigoted, and/or in support of police brutality. As reported by the media, the exposure prompted the Philadelphia District Attorney's Office to place several officers on its "do not call to testify" list. Critically, however, Officer Duaime received no such sanction or reprimand for his Facebook posts. The Commonwealth's claim that he was "cleared" of any wrongdoing was not rebutted by defense counsel.

The widespread media attention given to the investigation of the overtly racist Facebook posts of other police officers, many of whom were terminated or otherwise punished, created a "manifest necessity" for declaring a mistrial when defense counsel invoked the issue against Officer Duaime. The jury's central duty in this case was to determine Officer Duaime's credibility. He was the arresting officer and the Commonwealth's primary witness. By bringing attention to the Facebook investigation, defense counsel intended to imply that Officer Duaime is a violent racist who falsely arrested and beat Appellant because of his skin color. However, the Internal Affairs investigation could not justify defense counsel's implication, as Officer Duaime was cleared of wrongdoing. After sidebar discussions with counsel, this Court determined that a curative instruction could not rectify the potential for unfounded jury bias against the Commonwealth's central witness, and that a mistrial was therefore warranted.

Defense counsel's raising of the issue unduly tarnished Officer Duaime as a rogue, racist cop whose testimony merited no credibility. The potential that jurors formulated a bias by connecting Officer Duaime to the overt racism and improprieties of other officers under investigation, created a "manifest necessity" for a mistrial in these specific circumstances. . . .

Trial Court Opinion, 6/11/20, at 7-8, 10-11 (citations and footnotes omitted).

Notably, while the trial court found the question at issue to be "wholly

unjustified," it did not make a finding that counsel asked the question to provoke the Commonwealth to seek a mistrial.

With this background established, we turn to Appellant's arguments. Appellant first contends that the questioning at issue was not even objectionable, let alone grounds for declaring a mistrial. Rather, he maintains, the cross-examination was a proper exploration of the officer's bias against accused individuals in general, and Appellant in particular. *See* Appellant's brief at 16-18. Appellant further argues that even if the questioning was improper, there was no manifest necessity to declare a mistrial, because the questions were not answered and the trial court failed to consider less drastic alternatives, such as a curative instruction, which would have ameliorated any prejudice. *Id*. at 19-24.

The Commonwealth responds that the questions asked by defense counsel were inappropriate, as they were designed to elicit other-bad-acts evidence that is inadmissible pursuant to Pa.R.E. 404(b). *See* Commonwealth's brief at 8-11. Further, it asserts the question about the investigation concerning the officer's Facebook post created a manifest necessity for a mistrial because it "signaled to the jury that the officer was part of the widely publicized exposé on racist and corrupt police officers, especially where the question followed multiple suggestions that the officer had stomped on him." *Id*. at 12. Finally, the Commonwealth claims that the trial court did consider alternatives to a mistrial during an off-the-record

sidebar prior to its ruling, as Appellant acknowledged in his motion to dismiss. The Commonwealth posits that the court's failure to memorialize that consideration on the record did not evidence a neglect to undertake the proper deliberation which entitles Appellant to relief. *Id*. at 13-14 (citing Appellant's Motion to Dismiss, 9/16/19, at ¶ 6).

We need not resolve the issue of the admissibility of the evidence. Rather, we hold that, even assuming the question asked by defense counsel was wholly inappropriate, the record does not support the trial court's representation that it properly rejected less drastic corrective measures and concluded that a mistrial was manifestly necessary.

We first observe that the trial court's assessment of the prejudice suffered by the Commonwealth appears to be based upon the assumption that the jury not only has a full awareness of the Plain View Project and the disturbing subset of law enforcement culture it revealed, but also necessarily associated a question about an "IA investigation" concerning Officer Duaime's "Facebook post" with the Project. However, there is no suggestion in the certified record that the Plain View Project was a topic addressed during *voir dire*, and the trial court did not undertake any questioning of the jury, as a group or individually, to ascertain whether any such awareness existed in these particular individuals. *Cf. Commonwealth v. Bycer*, 401 A.2d 740, 742 (Pa. 1979) (holding mistrial was not necessary where the trial court's questioning of jurors established that the jurors did not see or did not

comprehend the import of improper conduct). Instead, the trial court merely offered links in its Pa.R.A.P. 1925(a) to several internet articles about the discovery of the Facebook group and the fact that some of its members were Philadelphia police and were being investigated. *See* Trial Court Opinion, 6/11/20, at 10 n.1. Consequently, the certified record bespeaks only the mere potential of prejudice to the Commonwealth, not a factual finding that Appellant's jurors understood the question to insinuate the full extent of what the trial court suggests.

Given what appears to be an unduly dire assessment of prejudice, given the dearth of evidentiary support in the certified record, it is not at all clear that a cautionary instruction would not have sufficed to remedy the situation. We find this Court's decision in *Commonwealth v. Rivera*, 715 A.2d 1136, 1139 (Pa.Super. 1998), instructive. In that case, this Court was tasked with determining whether manifest necessity existed to grant the Commonwealth's motion for a mistrial where the defense asked the victim, who was the Commonwealth's only witness, if he "h[u]ng out in the bar called The Village." *Id*. at 1137. The defense intended to later impeach the victim with a witness who twice had conversations about the incident in question with the victim at that establishment. The Commonwealth objected and moved for a mistrial at a sidebar conference. The trial court granted the Commonwealth's motion, stating "the only inference this Court can draw is that he is a drunkard, and that is not proper. It is too prejudicial for me to permit it to go on." *Id*. at

- 15 -

1138 (cleaned up). After the trial court denied the defendant's motion to dismiss the subsequent prosecution based upon double jeopardy, this Court reversed, explaining as follows:

> [W]e conclude that manifest necessity did not exist to justify the trial court's declaration of a mistrial. . . . [W]e find no evidence of intentional conduct on the part of defense counsel to provoke the Commonwealth to request a mistrial. . . .
>
> It may well be true that defense counsel could have phrased the question in a more appropriate manner. However, we cannot agree that the question was so highly prejudicial as to give rise to a finding of manifest necessity. Here, the Commonwealth's objection was to the form and content of the question and not to any response by the witness. The sidebar discussion took place without any response having been given by the witness to the question. Here, [the victim] was never given the opportunity to respond to the question. Had he answered "No," there could not have been any negative inference. Our Supreme Court has declared: "It is well settled in the law that attorneys' statements or questions at trial are not evidence." Thus, had the trial court given a curative instruction in the face of no response by the witness, any possible negative inference by a juror would surely have been overcome.

*Id*. at 1139 (cleaned up).

The Commonwealth maintains that "[t]he powerful and readily apparent context of the question [asked by Appellant's counsel] distinguishes this case from [*Rivera*]." Commonwealth's brief at 13. Had Appellant's counsel actually referenced the Plain View Project, intimated that Officer Duaime was part of a larger investigation into impropriety, or revealed to the jury the content of Officer Duaime's posts, we might agree, and conclude that the trial court would have been justified in determining that Appellant sought to provoke the Commonwealth to request a mistrial and that there was no other

means for curing the damage. However, the question asked was merely whether Officer Duaime was "currently under IA investigation for [his] Facebook post," Officer Duaime did not answer the question, and the jury neither saw nor heard anything about any of the social media posts referenced by the trial court. For all the jury knew, based upon the certified record before us, counsel may have been speaking of a Facebook post about Appellant in particular, or about a matter wholly unrelated to his police work.

Furthermore, immediately following the question the Commonwealth maintained that Officer Duaime had been cleared of any wrongdoing before he testified at Appellant's trial. Yet, the trial court did not take steps to confirm whether any investigation was undertaken or concluded in Officer Duaime's favor. If the trial court had taken a recess to determine the facts, any potential for prejudice may have been able to be remedied by allowing the Commonwealth to elicit on re-direct the fact that Officer Duaime had been cleared of any Facebook-related wrongdoing. In any event, as Appellant notes in his brief, the trial court had the power to strike the question and instruct the jury to ignore it, reminding them that questions are not evidence. *See* Appellant's brief at 19. Indeed, the trial court had instructed the jury as follows before Officer Duaime testified:

> Statements made by counsel are not evidence. **The questions that counsel put to the witness are not evidence**. It is the answers to those questions by the witness that provide the evidence for you.

> **You should not speculate or guess that a fact may be true merely because one of the lawyers asks a question which assumes or suggests that a fact is true**.

> Sometimes there will be objections to the questions that are asked by counsel. If I overrule the objection to the question, you may consider the answer. If, however, I sustain the objection to the question, that means that I will not allow an answer to be given. And if one has already been given, I will most likely direct you to disregard it and you must do so.

N.T. Trial, 8/13/19, at 17 (emphases added).

It is well-settled that jurors are presumed to follow the trial court's cautionary instructions. *See*, *e.g.*, *Risoldi*, *supra* at 458. *See also Commonwealth v. Cole*, 167 A.3d 49, 77 (Pa.Super. 2017) (concluding mistrial was not warranted by prosecutor's comments because a cautionary instruction was presumably followed). The certified record in the case *sub judice* does not evince what consideration, if any, the trial court gave to employing the less-drastic measure of a cautionary instruction.

Even if such an instruction were pondered and rejected in an off-the-record discussion, we cannot conclude that the certified record reflects that the trial court offered a sound and reasonable basis for inferring that a cautionary instruction to the jury would not be sufficient. As such, the certified record does not support that the trial court engaged in a proper use of its discretion before declaring a mistrial. *Accord Commonwealth v. Cobb*, 28 A.3d 930, 935 (Pa.Super. 2011), *aff'd*, 65 A.3d 297 (Pa. 2013) (*per curiam* order) ("[W]e are convinced that less severe remedies than a mistrial existed in this case at the time the mistrial was declared. The record is absolutely

devoid of any indication that the trial court considered any less drastic measures.").

Significantly, this Court and our Supreme Court have repeatedly held that the extreme remedy of a mistrial was unwarranted when an improper question went unanswered by the witness. For example, in **Risoldi**, the prosecution asked a question of a defense witness which arguably suggested that the defense had the responsibility to produce evidence, shifting the burden of proof from the Commonwealth to the defense. The defense objected before the witness answered. The trial court declined to grant the defense's request for a mistrial, instead concluding that a cautionary instruction reminding the jury that the defense had no obligation to call any witnesses was sufficient to cure any prejudice. On appeal, we rejected the defendant's claim that the trial court was compelled to declare a mistrial following the improper question by the prosecution, highlighting that the defendant immediately objected and the witness did not answer the question. We held that the cautionary "instruction, coupled with the instructions given at the beginning of the trial and in the final charge, was sufficient to allay any prejudice that may have arose from the question[.]" **Risoldi**, **supra** at 460.

In **Commonwealth v. Jones**, 668 A.2d 491 (Pa. 1995), the prosecution attempted to impeach a defense witness by referencing prior convictions, but improperly included non-*crimen falsi* convictions. Specifically, the jury heard the following before the defense objected: "Now, you in fact—let's see, were

convicted of robbery, robbery, robbery, three counts of robbery, assault, reckless endangering—." *Id*. at 509. The defense moved for a mistrial, the motion was denied, and our Supreme Court affirmed, explaining that although the prosecutor behaved improperly, no "mistrial was warranted since the question was not answered. The jury was instructed in opening and closing that the prosecution's statements were not to be considered by the jury as evidence." *Id*.

Similarly, in **Commonwealth v. Baranyai**, 419 A.2d 1368 (Pa.Super. 1980), the prosecution attempted to impeach the defendant by asking him if he remembered telling a witness that he would press charges against all the prosecution's witnesses if he were acquitted. The trial court sustained a defense objection and instructed the jury to disregard the question, but denied the defense's request for a mistrial. This Court affirmed, ruling as follows: "we need not decide whether the inquiry proposed by the prosecuting attorney was a bona fide attempt to show such intimidation, for the trial court sustained an objection thereto and instructed the jury to disregard the question. A mistrial, therefore, was not warranted." *Id*. at 1371.

As noted above, this Court must err on the side of the defense in determining whether a mistrial was manifestly necessary. **See Kennedy**, **supra** at 424 ("When determining whether manifest necessity exists any doubt must be resolved in favor of the defendant." (cleaned up)). Given that this Court and our Supreme Court have held that unanswered questions did

not require a mistrial when the defense actually wanted one, it follows that granting a mistrial based upon similar misconduct is even less warranted in the instant case where the defendant opposed the motion.

In sum, we conclude that, resolving all doubts in favor of the defendant, it is not manifest from the certified record that the declaration of a mistrial was necessary here, where the trial court took no measures to alleviate any potential for prejudice, and instead merely assumed there had been extreme prejudice. As such, a third trial of Appellant on the charge at issue is impermissible pursuant to the Double Jeopardy clauses of the state and federal constitutions, and the trial court erred in denying Appellant's motion to dismiss. We therefore reverse the trial court's November 21, 2019 order and discharge Appellant.

Order reversed. Remanded with directions that Appellant be discharged. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/21