J-S24005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL O'BRIEN | : | |
| | : | |
| Appellant | : | No. 1329 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 22, 2022
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000818-2020

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED: August 20, 2024**

Michael O'Brien appeals from the aggregate judgment of sentence of twenty-five to seventy years of imprisonment imposed after being convicted of numerous sexual offenses against his adopted minor daughter, K.O. We affirm.

We glean the following background from the certified record. Appellant and his wife, Carrie O'Brien, adopted K.O. from China in 2008 when K.O. was four years old. In 2020, Mrs. O'Brien informed the Pennsylvania State Police that she believed Appellant was sexually abusing K.O. After an investigation, the Commonwealth filed a criminal information charging Appellant with thirty-three offenses, asserting that between 2015 and 2019, Appellant habitually sexually assaulted K.O. The matter ultimately proceeded to a jury trial.

_____

[*] Former Justice specially assigned to the Superior Court.

K.O., then seventeen years of age, testified to the following. Appellant penetrated her vagina with his fingers and performed oral sex on her more than 200 times over an approximately five-year period. He also penetrated her vagina with his penis four separate times. Since she was afraid that no one would believe this was happening, K.O. surreptitiously recorded two conversations between her and Appellant on her iPad, referencing the abuse in general terms as "touching" and asking why he was doing it. During one of the discussions, Appellant indicated that the impetus for his conduct was at least in part that he was sexually frustrated due to lack of sex with Mrs. O'Brien. He did not refute her allegations that any touching occurred. Appellant also told K.O. not disclose what was happening because that would cause him and Mrs. O'Brien to divorce and would lead to him being in jail.

The Commonwealth next called Mrs. O'Brien to testify against Appellant. Mrs. O'Brien learned of the acts approximately ten months before charges were filed, when she found one of the videos that K.O. recorded and saved on the computer. She then confronted Appellant, who stated "[K.O.] wasn't supposed to tell you." N.T. Trial, 3/17/22, at 78. This statement was admitted over counsel's objection that it was a privileged communication between spouses. Notably, at the time Mrs. O'Brien approached Appellant, he did not deny performing the acts, nor did he accuse K.O. of lying.

Additionally, Mrs. O'Brien testified that shortly after learning of Appellant's conduct, she and Appellant legally separated and initiated divorce proceedings. During her direct examination, Mrs. O'Brien twice mentioned

that she had obtained a Protection from Abuse ("PFA") order against Appellant after learning about the abuse. In each instance, counsel promptly objected to the testimony as improper propensity evidence and moved for a mistrial. The trial court denied both motions; however, after the second time the PFA was referenced, the court issued a cautionary instruction to the jury not to consider any reference to a PFA order or proceeding. When the court asked counsel if the provided instruction was adequate, counsel indicated in the affirmative.

The Commonwealth also called as a witness Terri Watson, who served with Appellant in the military reserves in 2002-2003. Ms. Watson attested that she began a romantic relationship with Appellant after he and Mrs. O'Brien legally separated. A short time later, she learned from Appellant that he was under investigation relating to the alleged incidents, and she discussed the matter with him. Appellant conceded to her that he had sexual intercourse with K.O. one time shortly after her fifteenth birthday. Ms. Watson thereafter ended her relationship with Appellant and cancelled an upcoming trip they had planned together.

At the conclusion of trial, the jury found Appellant guilty as to all thirty-three counts, which included rape and involuntary deviate sexual intercourse. The trial court subsequently sentenced him as indicated hereinabove. Appellant filed a timely post-sentence motion, requesting, *inter alia*, a new trial based on the trial court overruling his privilege objections. More than

120 days later, the court entered an order deeming the motion denied by operation of law.

This timely appeal followed.[1]  The trial court ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b) and he complied. The court thereafter issued a responsive opinion.

Appellant presents the following two issues for our review:

I.       Whether the lower court erred or abused its discretion and committed an error of law when it failed to grant [Appellant]'s motion of spousal privilege and allowed [Appellant]'s wife to testify regarding confidential communications between she and [Appellant] in contravention of 42 Pa.C.S. § 5914[.]

II.      Whether the lower court erred as a matter of law or abused its discretion by failing to grant [Appellant]'s motion for a new trial based upon the prosecutor's attempt to improperly introduce evidence of a [PFA] order previously entered against [Appellant].

Appellant's brief at 4.

Appellant's first issue claims that the trial court erred in admitting testimony from Mrs. O'Brien that Appellant told her, "[K.O.] wasn't supposed

---

[1] Generally, if a court does not decide a post-sentence motion within 120 days, it shall be deemed denied by operation of law.  **See** Pa.R.Crim.P. 720(B)(3)(a). In that event, "the clerk of courts shall forthwith enter an order on behalf of the court . . . that the post-sentence motion is deemed denied."  Pa.R.Crim.P. 720(B)(3)(c).  Here, after expiration of the 120-day period, the clerk of courts did not enter the order deeming the motion denied until the trial court did so on its own initiative.  We have held that under similar circumstances, this constitutes a "breakdown in the court system."  **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa.Super. 2003).  Accordingly, in the interest of judicial economy, we exercise our power under Pa.R.A.P. 105(a) to disregard these technical errors and consider the appeal as properly filed within thirty days from the trial court order denying the post-sentence motion.

to tell you," in contravention of the privilege of confidential communications between spouses at § 5914. This presents a question of law, which is subject to *de novo*, plenary review. ***See Commonwealth v. Spetzer***, 813 A.2d 707, 715 (Pa. 2002).

Section 5914 states as follows: "Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 Pa.C.S. § 5914. Our High Court has noted that "[§] 5914, which is waivable only by the spouse asserting the privilege, prevents a husband or wife from testifying against their spouse as to any communications which were confidential when made and which were made during the marital relationship." ***Commonwealth v. Small***, 980 A.2d 549, 561 (Pa. 2009) (citation omitted). Further:

> For § 5914 to apply, it is also essential the communication be made in confidence and with the intention that it not be divulged. We look to whether the spouse making the statement had a reasonable expectation the communications would be held confidential. Generally, the presence of third parties negates the confidential nature of the communication. **Even if privileged testimony under § 5914 is erroneously admitted into evidence, it is harmless error if it is merely cumulative of other admissible testimony**.

***Id***. at 562 (cleaned up, emphasis added).

This Court has stated that, "[u]nder the harmless error doctrine, we must vacate the order on review to correct the error unless we are convinced beyond a reasonable doubt that the error is harmless." ***Commonwealth v.***

- 5 -

*Murray*, 248 A.3d 557, 576 (Pa.Super. 2021) (cleaned up). This doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Wilson*, 286 A.3d 1288, 1300 (Pa.Super. 2022) (citation omitted). It also seeks to "promote . . . public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Id*. at 1301.

Appellant contends that the statement he made to Mrs. O'Brien was uttered during their marriage with no one else present, and hence privileged. *See* Appellant's brief at 11. He further claims that he never waived the privilege at trial or otherwise. *Id*. Appellant concludes that Mrs. O'Brien was "not allowed to divulge confidential communications", even if she were otherwise competent to testify against him generally pursuant to other rules or statutes. *Id*. at 12.

In rejecting Appellant's claim, the trial court relied upon § 5913, a separate provision addressing spouses as witnesses against each other. That statute iterates the following, in relevant part:

> Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:
>
> . . . .
>
> (2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

. . . .; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

42 Pa.C.S. § 5913.

The trial court concluded that use of the word "shall" in the statute makes it clear that the spousal privilege did not apply based on the charges herein, and that Mrs. O'Brien's testimony regarding Appellant's statement was therefore admissible. *Id*. at 7. For its part, the Commonwealth agrees with the trial court that the spousal communication was properly admitted pursuant to § 5913. *See* Commonwealth's brief at 2-3.

Initially, we note that whether Mrs. O'Brien was competent to testify against Appellant pursuant to § 5913 has no bearing as to whether she could disclose confidential communications between them. Our High Court has made it clear that §§ 5913 and 5914 "are separate rules, and § 5913's exception preventing a spouse from asserting the privilege in certain criminal proceedings does not trump § 5914." *Small*, 980 A.2d at 561 (citation omitted). Thus, the trial court could not simply rely on the fact that an exception was met in § 5913 regarding Mrs. O'Brien's general competency to testify against Appellant to justify introducing a confidential communication between them, as defined by § 5914.

That said, we must still determine whether the communication at issue was confidential, and if so, whether its admission was harmless. Assuming *arguendo* that Appellant's implicit concession of guilt was privileged pursuant

to § 5914, as he contends, we nevertheless find that any error in admitting the statement was harmless since it was cumulative of the other evidence of guilt proffered against Appellant, particularly the videos recorded by K.O. Therein, Appellant did not deny K.O.'s references to him touching her. Rather, he expressed his hope that it felt good for her and provided a motive for the acts. Similarly, Mrs. O'Brien testified that when she confronted Appellant after discovering one of the videos, he never disputed engaging in the conduct referred therein, nor did he at any point accuse K.O. of being dishonest. Likewise, Appellant admitted to Ms. Watson that he had sexual intercourse with K.O. and defended the act on the grounds he and K.O. were not biologically related. This statement rendered cumulative Appellant's concession to Mrs. O'Brien as to that particular act. Finally, if we interpret Appellant's remark to literally mean that he instructed K.O. to keep the sexual abuse a secret, it was duplicative of K.O.'s testimony that she was pressured not to disclose the acts because it would lead to Appellant's divorce and a jail sentence.

In all, we are convinced beyond a reasonable doubt that any error arising from the erroneous admission of this sole statement is harmless. **See Murray**, 248 A.3d at 576. Therefore, no relief is due.

In his remaining claim, Appellant asserts that the court erred in denying his motions for a new trial based on alleged prosecutorial misconduct, arising from the two references Mrs. O'Brien made to obtaining a PFA order against

him.  **See** Appellant's brief at 12-14.  The following governs our consideration of this issue:

> A motion for a mistrial is within the discretion of the trial court.  A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial.  It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial.  On appeal, our standard of review is whether the trial court abused that discretion.

**Commonwealth v. Bennett**, 225 A.3d 883, 890 (Pa.Super. 2019) (citation omitted).

In discussing this issue, the trial court opined, *inter alia*, that a mistrial was not warranted because any alleged prejudice was ameliorated when it provided the following cautionary instruction to the jury:  "I would ask the jury to put out of their minds any mention of a PFA or what a PFA is, and that anything that you may have heard you are not to consider at all."  N.T. Trial, 3/17/22, at 111; **see also** Trial Court Opinion, 1/13/23, at 7.  Appellant does not directly address this contention in his brief, instead merely asserting that he was prejudiced by the references to the PFA and that the Pennsylvania Rules of Evidence did not permit the testimony, since the Commonwealth never provided prior notice of its intent to introduce the evidence.  **See** Appellant's brief at 12-14.

We conclude that the trial court did not abuse its discretion in denying Appellant's requests for a mistrial.  "It is well-settled that jurors are presumed to follow the trial court's cautionary instructions."  **Commonwealth v.**

***Goods***, 265 A.3d 662, 672 (Pa.Super. 2021) (citation omitted). After Mrs. O'Brien mentioned obtaining a PFA order against Appellant a second time, the court informed the jury that it was not to consider anything about PFA proceedings in this case. Appellant has not convinced us through any argument or citation to pertinent law that the instruction given by the trial court was insufficient to cure any prejudice arising therefrom. This is especially true as, in this instance, Appellant's counsel indicated to the court that the instruction was adequate. Thus, Mrs. O'Brien's remarks were not "of such a nature that [their] unavoidable effect [wa]s to deprive" him of a "fair and impartial trial." ***Bennett***, 225 A.3d at 890.

Since Appellant has presented no issues warranting relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/20/2024